800 So.2d 978 (2001)
STATE of Louisiana
v.
Anthony KELLY.
No. 01-KA-321.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2001.
*980 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Bradley R. Burget, Assistant District Attorneys, Gretna, LA, Counsel for the State.
Margaret S. Sollars, Thibodaux, LA, Counsel for defendant-appellant.
Court composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, JUDGE.
In this matter, Defendant Anthony Kelly appeals both his conviction for possession with intent to distribute marijuana and the subsequent multiple offender finding. We affirm the conviction and finding, but remand the matter for correction of one patent error.

STATEMENT OF THE CASE
Defendant, Anthony Kelly, was charged in a bill of information on September 10, 1999 with possession of marijuana with intent to distribute in violation of LSA-R.S. 40:966(A). He pled not guilty and filed several pre-trial motions including a motion to suppress the evidence and his statement. After a hearing the morning of trial, the trial court denied Defendant's motions to suppress the evidence and statement. Defendant proceeded to trial before a 12-person jury on August 17, 2000. By a count of 10 to 12, the jury found Defendant guilty as charged of possession of marijuana with intent to distribute. Defendant was subsequently sentenced to 15 years.
Immediately after sentencing, the State filed a multiple offender bill of information alleging Defendant to be a third felony offender based on two prior convictions for possession of cocaine with intent to distribute and simple possession of cocaine. Defendant denied the allegations of the multiple bill and a hearing was held on November 17, 2000. At the conclusion of the hearing, the trial court found Defendant to be a third felony offender, vacated Defendant's original 15-year sentence, and imposed an enhanced sentence of life imprisonment *981 without the benefit of parole, probation or suspension of sentence.
Defendant seeks appeal from his conviction of possession of marijuana with intent to distribute and his finding as a third felony offender.

FACTS
On June 23, 1999, a confidential informant made a controlled drug buy from Co-Defendant, Gwendolyn Minor, at 2713 Dawson Street during which the informant purchased $20.00 worth of marijuana.[1] The controlled buy was arranged after the confidential informant advised Detective Janell Godfrey with the Kenner Police Department that marijuana was being distributed from the address by a black female named "Gwen."
The day after the controlled drug buy Detective Godfrey obtained a search warrant for 2713 Dawson Street. The search warrant was executed on July 1, 1999, at approximately 7:00 p.m. after the confidential informant advised Detective Godfrey that the residence had just received a large amount of marijuana. In executing the search warrant, the police used a ram and made a forced entry into the residence where they found Defendant, two of Defendant's brothers (James and Keithen), Co-Defendant, and Co-Defendant's juvenile son (E.M.) and young daughter.
Defendant and E.M. were found in the upstairs bathroom, where E.M. had his hands in the toilet and Defendant was frantically trying to flush the toilet. A clear plastic bag containing 21 smaller bags of marijuana was retrieved from the toilet. Additionally, three partially smoked hand-rolled marijuana cigarettes were observed in plain view in the ashtray on the living room table and a marijuana odor was detected in the home. A search of Co-Defendant's purse revealed another clear plastic bag with 21 smaller bags of marijuana, a bag of loose marijuana and EZ Wilder rolling paper which is used to package marijuana. "Dime bags", which are also used to package marijuana, were found in the bedroom of the residence.
Defendant claimed he did not live in the residence and did not know Co-Defendant was selling marijuana. However, a letter with a postage date of June 25, 1999, was found in the bedroom addressed to Defendant at that address. The defense offered a tax refund document addressed to Defendant that showed a different address of 2718 Dawson. The document was dated March 26, 1999, and was for the 1998 tax period. Detective Godfrey testified there were men's clothes and shoes in the bedroom closet of 2713 Dawson Street. She testified the clothes and shoes were for a large size man. Defendant was described as being 6 feet tall and weighing 250 lbs. Also, in the bedroom there was a picture of Defendant and Co-Defendant together that said "Gwen, Lil Bit forever love."
Defendant and Co-Defendant were arrested and charged with possession of marijuana with intent to distribute. Defendant's two brothers, James and Keithen, and Co-Defendant's son, E.M., were arrested and charged with simple possession of marijuana.

ASSIGNMENT OF ERROR NUMBER ONE
As his first assignment of error, Defendant argues that the evidence is insufficient to support this conviction.
*982 Defendant argues there was insufficient evidence to show he had specific intent to distribute marijuana. He claims he was unaware his Co-Defendant was selling marijuana and alleges the evidence failed to show he even had knowledge that marijuana was present in the residence. Defendant asserts the evidence was insufficient to show he lived in the residence. He further argues his Co-Defendant admitted that she was solely responsible for the marijuana.[2]
The standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. LSA-R.S. 40:966(A); State v. Taylor, 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, 71, writ denied, 00-1021 (La.3/30/01), 2001 La. LEXIS 1071, 788 So.2d 441. The first element, "possession," includes both "actual" and "constructive" possession. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 786. A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion or control. Id. Factors considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession include: 1) the defendant's knowledge that illegal drugs were in the area; 2) his relations with the person found to be in actual possession; 3) the defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) the existence of paraphernalia; and, 6) evidence that the area was frequented by drug users. Id.
The mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance is insufficient to constitute constructive possession. Additionally, being a resident of the premises where drugs are found is not in and of itself sufficient to prove constructive possession. State v. Hodge, 00-0515 (La.App. 4 Cir. 1/17/01), 781 So.2d 575, 580. Nevertheless, a person found in the area of the contraband can be considered in constructive possession if it is subject to his dominion and control. The defendant can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. Id. Proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Williams, 98-1006 (La. App. 5 Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
Defendant does not challenge the finding that he was in possession of marijuana. Rather, he challenges the determination that he had specific intent to distribute marijuana. Specific intent is defined as that state of mind which exists when the circumstances indicate the offender *983 actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10. The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Quest, 772 So.2d at 786. Factors which may give rise to a reasonable inference that defendant had the specific intent to distribute include 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. Id.
In the present case, the marijuana defendant was trying to flush down the toilet was packaged in 21 small colored plastic bags. These bags were identified as "dime" bags, meaning they sold on the street for $10.00 each. The total weight of the marijuana in the clear plastic bag found in the toilet was 31.7 grams. Sergeant Bruce Harrison, an expert in the use, packaging, distribution and value of street level narcotics, testified that a smaller amount of the drugonly two to three individual packageswould have been indicative of personal consumption. He explained that to purchase the 32 grams of marijuana the way it was individually packaged in Exhibit S-6[3] would cost approximately $200-$210, whereas a person could buy 28 grams of marijuana in bulk for $80-$100. Thus, he concluded it would not be economical or practical to purchase that amount of marijuana, individually packaged, for personal consumption.
Drug paraphernalia, specifically "nickel" and "dime" bags used for packaging, was found in the bedroom. Loose marijuana was also found in the home. Sgt. Harrison testified that while loose marijuana alone could be consistent with personal consumption, the presence of individual packages ready for sale indicates that packaging for retail distribution has been interrupted, leaving some loose amount of the substance.
Co-Defendant testified that Defendant did not know she sold marijuana. She claimed all of the marijuana was hers and that she packaged the marijuana by herself with no help from Defendant. She testified that she kept some of the marijuana under the bathroom sink but no one knew about it. Sgt. Harrison testified that the bathroom is the most common place for people to destroy drugs when the police arrive. He explained that most suspects have a plan in place of what to do with the drugs when the police enter the house. Sgt. Harrison stated that if a person is flushing the marijuana, that person knew the marijuana was there and knew what they were going to do in the event the police actually entered the house.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. It is not the function of an appellate court to assess credibility or reweigh the evidence. Id. Clearly, the jury did not believe Co-Defendant's testimony that Defendant had no knowledge that she sold marijuana and that he did not help her sell it.
*984 In State v. Taylor, 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, 72, writ denied, 00-1021 (La.3/30/01), 2001 La. LEXIS 1071, 788 So.2d 441, this Court found there was insufficient evidence to convict defendant of possession with intent to distribute marijuana. In Taylor, 74 grams of loose marijuana was found under defendant's bed and nine grams were found in hollowed-out cigars. While plastic bags commonly used to package marijuana were found in the home, no marijuana was divided into nickel or dime bags. In determining the evidence was insufficient to show defendant's intent to distribute, this Court focused on the lack of testimony as to whether the amount of marijuana was consistent with personal use. Conversely, in the present case, there was expert testimony that the amount of the marijuana combined with the way it was packaged was indicative of retail sale as opposed to personal consumption.
Admittedly, there was no evidence that Defendant had sold drugs in the past.[4] However, there was evidence marijuana had been sold out of the residence. The evidence clearly shows Defendant had knowledge that marijuana was in the house and that he exercised enough control over the marijuana to locate it and try to destroy it when the police arrived. The existence of drug paraphernalia, the individual packaging of the marijuana Defendant was trying to destroy, and the fact the amount of the marijuana was inconsistent with personal consumption support a reasonable inference that Defendant had specific intent to distribute the marijuana. Therefore, it appears the evidence is sufficient to support defendant's conviction.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
As his second assignment of error, Defendant argues that the court erred by accepting inadequate proof before sentencing Mr. Kelly to life in prison as a third felony offender.
Defendant argues the State failed to prove he was a third felony offender because it failed to prove he knowingly and intelligently waived his rights in the predicate pleas. He asserts he did not fully understand the consequences of his guilty pleas and, thus, the trial court erred in finding him to be a third felony offender. Defendant specifically claims he was not advised of and did not understand his guilty pleas could be used to enhance future convictions or of the sentencing range of the penalties involved with each plea. As such, Defendant argues he was improperly Boykinized and therefore could not have made a knowing and intelligent waiver of his rights.
To prove a defendant is a habitual offender, the state must prove the prior felony conviction and that the defendant is the same person who was convicted of the prior felony. This can be established by expert testimony matching fingerprints of the accused with those in the record of the prior proceeding. In addition, the state must show that the predicate convictions fall within the ten-year cleansing period prescribed by LSA-R.S. 15:529.1(C). State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 610, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971.
When the state relies on a prior conviction that is based on a guilty plea *985 to prove defendant's multiple offender status and the defendant denies the allegations of the multiple bill of information, the state has the burden of proving the existence of the prior guilty plea and that defendant was represented by counsel. Once the state meets this burden, the defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, i.e., that it was knowing and voluntary. The state can meet this burden by producing a "perfect" transcript of the guilty plea colloquy. A "perfect" transcript is one that reflects a voluntary, informed, and articulated waiver of the three specific rights discussed in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969): 1) the right to trial by jury, 2) defendant's privilege against self incrimination, and 3) his right to confront his accusers. Anything less than a "perfect" transcript, such as a guilty plea form, a minute entry, or imperfect transcript, requires the trial judge to weigh the evidence submitted by both sides and determine whether defendant's prior plea was knowing and voluntary and made with a waiver of the Boykin rights. State v. Shelton, 621 So.2d 769, 779-780 (La.1993).
In the present case, the multiple offender bill of information alleged defendant was a third felony offender based on two prior convictions: 1) a 1995 conviction for possession with intent to distribute cocaine based on a guilty plea, and 2) a 1993 conviction for possession of cocaine based on a guilty plea.
After denying the allegations contained in the multiple bill, Defendant filed a response to the multiple bill alleging the predicate pleas were defective because Defendant was not advised of the future applicability of LSA-R.S. 15:529.1.
At the multiple offender hearing, the State presented testimony of Virgil McKenzie, an expert in latent fingerprint analysis. Mr. McKenzie took a set of fingerprints from Defendant in court prior to the habitual offender hearing. He compared them with each set of fingerprints attached to the bills of information from the underlying 1999 conviction for possession with intent to distribute marijuana, the 1995 conviction for possession with intent to distribute cocaine, and the 1993 conviction for possession of cocaine. Mr. McKenzie concluded that Defendant's fingerprints matched all three sets of fingerprints in the prior records. In addition, the State submitted the court records from the 1993 and 1995 convictions, which indicated that Defendant had been represented by counsel in each case. Each record contains a minute entry indicating Defendant was advised of his rights, that he waived his rights and that he pled guilty to the charge. Also, each record contains a guilty plea form signed by Defendant, his attorney and the trial judge.
Regarding the validity of the predicate pleas, the State met its initial burden under Shelton of proving the existence of the guilty pleas and that Defendant was represented by counsel at the time of each plea. Thus, the burden shifted to Defendant to show an infringement of his rights or a procedural irregularity in the taking of the plea. The jurisprudence does not offer much guidance on what a defendant must do to satisfy this burden. In a footnote in State v. Shelton, 621 So.2d at 780, fn. 24, the court states that the defendant may "attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence."
At the multiple bill hearing, Defendant took the stand and admitted he pled guilty to possession of cocaine and possession *986 with intent to distribute cocaine. However, he testified he did not understand the consequences of his pleas, referring to "what would happen in the long term." He stated no one explained the minimum or maximum penalties for the charges to which he pled. Defendant further claimed no one explained the elements of the crimes to which he pled. He admitted signing the waiver of rights form but denied placing his initials on every line. Defendant stated he had gone through the eleventh grade, but had been in special education doing, only fifth-grade work. He further testified that he could read a little and commented that he can somewhat read a newspaper. No transcript of the plea colloquy was introduced at the multiple bill hearing.
Defendant complains his prior guilty pleas were not knowingly and intelligently made because he was not informed of his sentencing exposure at the time of his guilty pleas, nor was he told that a felony conviction could be used to enhance a future felony sentence. LSA-C.Cr.P. art. 556.1 requires the trial court to advise the defendant of his sentencing exposure prior to accepting a guilty plea. However, the article did not become effective until 1997 and, therefore, was not applicable when defendant entered his 1993 and 1995 guilty pleas. See State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 133, writ denied, 00-908 (La.4/20/01), 2001 La. LEXIS 1469, 790 So.2d 13.
Furthermore, the advice with respect to a defendant's sentencing exposure has never formed a part of the core Boykin requirements for the entry of a presumptively valid guilty plea. State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517. Additionally, the Louisiana Supreme Court has not required that a defendant be informed that his guilty plea may be used as a basis for the filing of a future multiple offender bill or that this aspect forms a part of the Boykin rights. State v. Frickey, 00-294 (La.App. 5 Cir. 9/26/00), 769 So.2d 791, 799. Thus, the failure of Defendant to be advised of the sentencing exposure in the predicate offenses or that his guilty pleas could be later used to enhance future convictions does not render his predicate pleas invalid. As such, Defendant failed to present affirmative evidence of any infringement on his rights or procedural irregularity in the taking of his predicate pleas and, therefore, the burden never shifted to the State to prove the constitutionality of the predicate pleas.[5]
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following.
The trial court did not advise Defendant of the prescriptive period for post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 upon re-sentencing him as a third *987 felony offender.[6] Therefore, we order the trial court to inform Defendant of the two-year prescriptive period by sending written notice to Defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received said notice. State v. Joseph, 99-1161 (La.App. 5 Cir. 3/22/00), 759 So.2d 141, 145.
For the above reasons, we affirm Defendant's conviction for possession with intent to distribute marijuana and his finding as a multiple third felony offender; we remand the matter for the trial judge to inform Defendant of the time limitations in which to file his application for post conviction relief.
AFFIRMED; REMANDED FOR CORRECTION OF PATENT ERROR.
NOTES
[1] Co-defendant Gwendolyn Minor was charged in the same bill of information as defendant with possession of marijuana with intent to distribute. She pled guilty as charged prior to trial.
[2] It is noted that defendant did not file a motion for post verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. However, defendant is correct in his assertion that such failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982).
[3] Exhibit S-6 was the bag found in the upstairs toilet.
[4] Although defendant had a prior conviction for possession with intent to distribute cocaine as demonstrated at the multiple bill hearing, this evidence was not presented at trial.
[5] See State v. Perkins, 99-1109 (La.App. 5 Cir. 4/25/00), 762 So.2d 67, 73, where this Court was faced with a similar situation. The defendant claimed his predicate pleas were invalid because he was not fully advised of the possible range of sentences at the taking of the plea. This Court held that such advice was not mandated until the institution of LSA-C.Cr.P. art. 556.1 which was not in effect at the time of defendant's predicate pleas. This Court upheld defendant's finding as a multiple offender by concluding defendant failed to present affirmative evidence of any procedural irregularity in the taking of the pleas and, therefore, the burden never shifted to the State to prove the constitutionality of the pleas.
[6] It is noted that the transcript reflects the trial court properly advised defendant of the prescriptive period for post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 when imposing his original 15-year sentence for his possession with intent to distribute marijuana conviction.