821 So.2d 28 (2002)
STATE of Louisiana
v.
Lawrence J. KERWIN.
No. 02-KA-103.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2002.
*30 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Appellant, Lawrence J. Kerwin.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux-Appellate Counsel, Alison Wallis-Counsel of Record on Appeal, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CANNELLA, Judge.
The Defendant, Lawrence Kerwin, appeals his conviction by guilty plea of third-offense driving while intoxicated (DWI) in violation of La.R.S. 14:98 D. We affirm.
The Defendant was charged with the offense on October 26, 2000 and pled not guilty. He subsequently filed a Motion to Quash the Bill of Information, alleging that both predicate pleas were defective because no proof of his knowing and intelligent waiver of his right to counsel is contained in either record. The motion was denied after a hearing. Thereafter, the Defendant filed a motion to reconsider which was also denied.
The Defendant subsequently withdrew his not guilty plea and entered a guilty plea under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the denial of his motion to quash. He was sentenced to three years at hard labor, suspended with three years of active probation. The Defendant was given several special conditions of probation, including serve six months in parish prison without the benefit of parole, probation or suspension of sentence and to pay a fine of $2,000.
The bill of information alleges that the present offense occurred on September 7, 2000. The exact facts are unknown since this was a guilty plea. The bill of information further alleges that the Defendant was previously convicted of DWI in Second Parish Court for Jefferson Parish on December 11, 1995 under docket number S599056, and on April 21, 1997 under docket number S630507.
On appeal, the Defendant contends that the trial judge erred in denying his Motion to Quash the Bill of Information. He contends that the predicate pleas are defective because he was unrepresented by counsel and the State failed to prove he knowingly and voluntarily waived his right to counsel.
At the original hearing on the motion to quash, the State submitted certified copies of the Defendant's 1995 and 1997 convictions for driving while intoxicated, which consisted of the minute entries, bills of information, waiver of rights forms, and the citations. Those documents reflect that the Defendant was not represented by counsel when he pled guilty to the offenses. At the hearing on the motion to reconsider, the State produced the transcripts of the colloquies of the predicate pleas.

BURDEN OF PROOF
When a defendant challenges the constitutionality of a predicate guilty plea involving the recidivist portion of the DWI statute, the state has the initial burden of proof to show the existence of a guilty plea and that the defendant was represented by counsel when the plea was entered. State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556, 559. See: State v. Boudreaux, 99-1017 (La.App. 5th Cir.2/16/00), 756 So.2d 505, 508. If the state meets this burden, it *31 shifts to the defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. If the defendant carries this burden, it shifts back to the state to prove the constitutionality of the plea.[1]Carlos, 738 So.2d at 559; Boudreaux, 756 So.2d at 508. However, this does not abrogate the longstanding jurisprudence requiring the state to prove that the defendant knowingly and intelligently waived his right to counsel before pleading guilty to a predicate misdemeanor DWI which is used to enhance a subsequent DWI plea. Boudreaux, 756 So.2d at 508.

KNOWING AND VOLUNTARY WAIVER
In State v. Stevison, 97-3122 (La.10/30/98), 721 So.2d 843, 844, the Louisiana Supreme Court held that a trial judge may accept a guilty plea for a misdemeanor offense from an unrepresented defendant only after the trial judge expressly advises the accused of his right to counsel, appoints counsel if he is indigent, and determines on the record that the waiver is made knowingly and intelligently under the circumstances. Several factors are to be considered in reaching the determination of whether a defendant knowingly and intelligently waived his right to counsel. Those factors include "age, education, experience, background, competency and conduct of the accused, as well as the nature, complexity and seriousness of the charge facing defendant." State v. Strain, 585 So.2d 540, 543-544 (La.1991). However, the factors discussed in Strain are not an "inflexible criteria or a magic word formula" for determining the validity of the defendant's waiver of counsel. Stevison, 721 So.2d at 844-845. Rather, "[t]he inquiry into the validity of the accused's waiver of counsel must take into account the totality of the circumstances in each case." Id.
The determination of whether a defendant understood his waiver of counsel prior to pleading guilty to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial. Strain, 585 So.2d at 544; State v. Frickey, 00-294 (La.App. 5th Cir.9/26/00), 769 So.2d 791, 796. The crime of driving while intoxicated is not complex and is almost self-explanatory. Strain, 585 So.2d at 544.
During the hearing on the motion to reconsider the denial of the motion to quash, the Defendant argued that these facts are similar to State v. Pendleton, 00-1158 (La.App. 5th Cir.11/28/00), 776 So.2d 1234, writ denied, 00-3489 (La.11/9/01), 801 So.2d 359.
The question of whether a defendant knowingly and intelligently waived his right to counsel is fact specific, and has arisen in several cases predating and following Pendleton. See: State v. Rodrigue, 01-377 (La.App. 5th Cir.8/28/01), 795 So.2d 488; State v. Lowry, 01-111 (La.App. 5th Cir.6/27/01), 791 So.2d 765[2]; State v. Roth, 00-1587 (La.App. 5th Cir.4/11/01), 786 So.2d 768; State v. Theriot, 00-870 (La. App. 5th Cir.1/30/01), 782 So.2d 1078; State v. Pendleton, 00-1158 (La.App. 5th Cir.11/28/00), 776 So.2d 1234, writ denied, 00-3489 (La.11/9/01), 801 So.2d 359; State v. Frickey, 00-294 (La.App. 5th *32 Cir.9/26/00), 769 So.2d 791; State v. Boudreaux, 99-1017 (La.App. 5th Cir.2/16/00), 756 So.2d 505; State v. Pickett, 99-532 (La.App. 5th Cir.10/26/99), 746 So.2d 185; State v. Garrity, 97-958 (La.App. 5th Cir.1/27/98), 708 So.2d 1096. All of these cases are similar in that the trial judge failed to make any inquiry into the background or educational status of the defendants to determine whether they understood the waiver of the right to counsel before accepting the guilty plea to the enhanced DWI offense.
In Pendleton and Garrity, we invalidated the enhanced DWI convictions, even though certified copies of the predicate bills of information, minute entries and transcripts of the plea colloquies indicated that the particular defendants understood the rights that they waived, including the waiver of counsel, as a result of pleading guilty. Pendleton was represented by appointed counsel during his arraignment, but his counsel was removed three weeks before the plea was entered after it was determined that Pendleton was not indigent. Two other charges were dismissed as a result of Pendleton's plea. In Garrity, we set aside the conviction because the only indication that Garrity had been informed of any rights was a "claim" by the assistant district attorney that he provided Garrity with a Boykin form and asked him whether he had any questions.
In Frickey and Pickett, also decided prior to Pendleton, we relied on the predicate records as a whole to find that the predicate pleas were knowingly and voluntarily made. In those cases, both defendants entered the predicate pleas under La. C.Cr.P. art. 894 (suspension and deferral of sentence in misdemeanor cases), a noted advantage to them. In finding that the pleas were valid in these two cases, we held that the plea colloquies allowed the trial judges an opportunity to adequately measure the capacities of Frickey and Pickett to understand the rights that they waived. Unlike Pickett however, Frickey was also asked by the trial judge if any threats or promises were made to coerce him to plead guilty. Also, Frickey was told by the trial judge to stop him if he had questions, or if he did not understand anything, and that the trial judge would explain anything he did not understand. Frickey did not ask any questions and he was not hesitant in answering the questions in the colloquy. Like the facts in Pendleton, other charges were dropped pursuant to Frickey's plea.
As to Pickett, the record further showed that he had spoken to the district attorney prior to entering his guilty plea. It was this conversation that informed Pickett of his right to plead guilty under La.C.Cr.P. art. 894.
Subsequent to Pendleton, this Court decided State v. Theriot, 00-870 (La.App. 5th Cir.1/30/01), 782 So.2d 1078, State v. Roth, 00-1587 (La.App. 5th Cir.4/11/01), 786 So.2d 768, writ denied, 01-1382 (La.4/12/02), 812 So.2d 663; State v. Lowry, 01-111 (La.App. 5th Cir.6/27/01), 791 So.2d 765 and State v. Rodrigue, 01-377 (La.App. 5th Cir.8/28/01), 795 So.2d 488. In these cases, we found that the transcripts of the predicate plea colloquies and waiver of rights forms sufficiently showed that those defendants knowingly and intelligently waived their right to counsel, despite the failure of the trial court to specifically inquire into the defendants' background and competency.
In Theriot, the record reflected that the defendant had been advised of his right to counsel at the arraignment, the plea was to his benefit since the charge was reduced to first offense DWI, the other charges were dismissed, and Theriot was allowed to plead under Article 894. The Lowry case was decided in favor of the state on the *33 basis of the decisions in Frickey, Theriot and Pickett. Any distinctions between the cases was insignificant as to the particular defendants' understanding of the waiver of their right to counsel.
In Roth, we noted that the waiver of rights form contained blank lines for the date and the name of the person who explained the form to Roth. However, the form was signed by Roth, signed and dated by the trial judge, and contained the case number, Roth's driver's license number, and social security number. In addition, the day and month that was filled in coincided with the date on which the trial judge signed the form. Also, at the time he entered the predicate plea, Roth stated in the record that he was 41 years old, that he had a high school education, and that he could read and write. Further, he had previously pled guilty to another DWI while represented by counsel.
In Lowry, the court found valid the predicate plea based on the waiver of rights form and the Boykin colloquy, citing Frickey, Pickett, and Theriot. The court stated that the colloquy gave the trial judge in the predicate plea an opportunity to measure Lowry's capacity to understand the rights that he was waiving. See, Lowry, 791 So.2d at 769.
In Rodrigue, the defendant conferred with the prosecutor prior to entering his guilty plea and was successful in obtaining a favorable sentence with other charges being dismissed. Although the same situation existed in Pendleton, no distinction is made. However, the court in Rodrigue cited Pickett, and noted that the plea colloquy gave the trial judge an opportunity to measure Rodrigue's capacity to understand the rights that he was waiving.

1995 Predicate Plea
The record shows that the 1995 conviction was the Defendant's first offense. At the time, the Defendant was 37 years old. During the hearing, no inquiry was made into his educational status or background. The transcript from the plea colloquy shows that the trial judge advised the Defendant that he was waiving his right to trial, his right to have the State prove his guilt beyond a reasonable doubt, his right to confront his accusers and to cross examine witnesses, his right against self incrimination, and his right to an attorney, or to have one appointed if he could not afford one. During the colloquy, the Defendant indicated that he understood these rights. Although the predicate plea colloquy was nothing more than a recitation of the Defendant's rights, he interrupted the trial judge at one point, stating that he did not understand a specific effect of the plea. In particular, the trial judge asked, "Do you understand that this plea can be used against you as a second or third offender and that this plea can seriously affect your rights under The Habitual Offender Law?" The Defendant replied, "I didn't understand that, that part." The trial judge then rephrased the question after which the Defendant responded, "I understand. Yes." Also, the waiver of rights form signed by the Defendant and the trial judge shows that the Defendant was advised of the same rights and their effects. Immediately above the signature line, the form states, "My rights have been thoroughly explained to me by the trial judge, I understand them, and I have no further questions to ask."
Because he questioned the judge when he failed to understand the implications relative to the Habitual Offender Law, and he answered in the affirmative to the other questions, we find that it can be reasonably inferred that the Defendant understood the waiver of his other rights, including the right to counsel. Under the totality of the circumstances, the trial judge did not err in finding that the Defendant *34 knowingly and intelligently entered his guilty plea to the 1995 predicate offense.

1997 Predicate Plea
The citation shows that the Defendant was 40 years old at the time of his second DWI conviction. The April 21, 1997 transcript of the plea colloquy shows that the trial judge advised the Defendant of his rights to a trial by judge, to have the State prove his guilt beyond a reasonable doubt, to confront his accusers and cross-examine witnesses, not to incriminate himself, and to have counsel. Prior to advising the Defendant of his rights, the trial judge specifically questioned him about the waiver of rights form that he executed. The Defendant indicated that he read the form and talked to the Assistant District Attorney (ADA). The trial court further instructed the Defendant to ask questions if he did not understand something. There was no inquiry into the Defendant's background and competency.
The evidence relative to this predicate plea is similar to that in Pickett and Frickey, since the Defendant spoke to the ADA prior to entering his plea. In addition, the Defendant received the benefit of the dismissal of other charges against him. During the plea colloquy, he was instructed that if he had any questions or failed to understand anything to stop the trial judge for an explanation. The Defendant did not ask any questions throughout the colloquy, and immediately prior to accepting the plea, the trial judge asked him again if he had any questions. The Defendant responded negatively. Furthermore, this was the Defendant's second DWI offense and he was no stranger to the offense or the process. Based on the totality of the evidence, we find that the Defendant knowingly and intelligently waived his right to counsel and his other rights at the time he entered his 1997 guilty plea.
The last issue relates to the blanks on both the 1995 and 1997 waiver of rights form. The 1995 form contains several uncompleted blank lines for the date of the offense, the maximum sentence and the sentence which the Defendant was to receive as a result of his guilty plea. The date of the offense is uncontested. Furthermore, as a result of his 1995 guilty plea, the Defendant received the minimum sentence of 10 days in parish prison, which was suspended in favor of six months active probation. He also had one other charge dismissed. Based on these facts, we find that the blank lines on the 1995 form pertaining to the Defendant's sentencing exposure are inconsequential to his knowing and voluntary waiver of his rights.[3]
The 1997 waiver of rights form is identical to the one the Defendant executed in 1995. Again, some of the blanks were not completed, including the charge to which the Defendant is pleading, the date of the offense, or the sentence which the Defendant was to receive. However, the form contains the docket number, is signed and dated by the Defendant and the trial judge, and the Defendant told the trial judge that he had discussed it with the ADA. Further, the commitment shows that he pled guilty to La.R.S. 14:98(C) and was sentenced to 30 days in jail, which was suspended in favor of 18 months of active probation. Based on the evidence, we find *35 that these blank lines are also inconsequential and do not vitiate the Defendant's guilty plea to the 1997 offense.
Based on the evidence at the hearing on the motion to quash the two predicate offenses, we find that the State initially bore its burden of proving that the Defendant knowingly and voluntarily pled guilty to both the 1995 and 1997 DWI offenses. Following this, the burden of proof shifted to the Defendant to produce affirmative evidence of an infringement on his rights or a procedural irregularity in the taking of his plea. A review of the record shows that the Defendant made no such showing and therefore did not carry his burden of proof. Thus, we find that the trial court did not err in denying the motion to quash the 1995 and 1997 predicate guilty pleas.

PATENT ERROR
We have reviewed the record for patent errors, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 206. We find no patent errors.
Accordingly, the Defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] This burden shifting scheme was first enunciated in State v. Shelton, 621 So.2d 769 (La. 1993), which involved habitual offender proceedings. The Court in Carlos extended Shelton's burden shifting procedure to the recidivist portions of the DWI statute.
[2] An application for writs was filed with the Louisiana Supreme Court in State v. Roth on May 16, 2001, the results of which are pending.
[3] Prior to August 15, 1997, advice regarding a defendant's sentencing exposure was not required before a trial judge could accept a guilty plea. La.C.Cr.P. art. 556.1; State v. Kelly, 01-321 (La.App. 5th Cir.10/17/01), 800 So.2d 978, 986. Furthermore, the advice with respect to a defendant's sentencing exposure has never formed a part of the core Boykin requirements for the entry of a presumptively valid guilty plea. Id.