EDWARD A. DUFRESNE, JR., Chief Judge.
|2The Jefferson Parish District Attorney filed a bill of information on September 18, 2007, charging defendant, Charles Grimes, with distribution of marijuana, in violation of LSA-R.S. 40:966(A). At the November 2, 2007 arraignment, defendant pled not guilty. On March 31, 2008, the trial court heard and denied defendant’s motion to suppress identification and evidence. The matter proceeded to trial before a twelve-person jury on April 1, 2008. After listening to the evidence presented, the jury found defendant guilty of distribution of marijuana. On April 14, 2008, the trial court sentenced defendant to thirty years in the Department of Corrections.
The State filed a multiple offender bill of information alleging that defendant was a third felony offender based on a Louisiana conviction for attempted purse snatching and an Alabama |sconviction for attempted murder of a police officer. However, the State amended the bill to add another predicate felony, an Alabama conviction for first degree assault. Following a hearing on August 21, 2008, the court found defendant to be a triple felony offender, vacated *422 defendant’s original sentence, and sentenced him to life imprisonment without benefit of parole, probation, or suspension. Defendant now appeals.

FACTS

At trial, Deputy Samuel Martin of the Jefferson Parish Sheriffs Office testified that on June 28, 2007, he was working in an undercover capacity in the Beechgrove area of Westwego. On that particular day, Officer Martin, dressed in plain clothes, drove into this area in an unmarked vehicle which was equipped with a video camera and an audio transmitter. The officer asked an individual, later identified as defendant, for “herb,” street slang for marijuana. In response, defendant went to his white truck and retrieved an envelope. Defendant gave the officer the envelope which contained green vegetable matter, and in exchange, the officer gave defendant twenty dollars in U.S. currency which had been photocopied.[1] The green vegetable matter later tested positive for marijuana. Deputy Martin testified that the approximate weight of the marijuana was 12.0 grams. After the transaction was complete, defendant left in the white truck. The officer then broadcast defendant’s license plate number to the surveillance team.
Within minutes of the drug transaction, the police stopped the suspect vehicle. Detective Joe Williams, a narcotics supervisor in Jefferson Parish and part of the surveillance team, testified that once the truck was stopped, a field interrogation card was completed in order to determine the suspect’s identity. Also, at some point during the stop, the officers retrieved currency from defendant’s person. However, defendant was not arrested at this time for the narcotics transaction with the undercover officer.
[4Subsequent to defendant’s stop, Detective Williams compiled a photographic array comprised of six suspects of similar appearance. Within several hours of the narcotics transaction, Detective Williams showed this lineup to the undercover officer. Deputy Martin positively identified defendant in the photographic lineup and in court as the individual he purchased marijuana from on June 28, 2007.

ASSIGNMENT OF ERROR NUMBER ONE

In the first assigned error, defendant’s appellate counsel argues that defendant was denied his Fourth Amendment right to privacy when officers stopped the truck he was driving, searched his person, and removed money from his pocket with the intended purpose of using copies of the bills seized as evidence against him. Counsel asserts that this error was compounded when the trial judge curtailed the defense inquiry into the stop and, even though the State failed to justify either the search or the seizure, denied the motion to suppress finding that no constitutional violation has occurred. Appellate counsel further argues that the trial court erred by admitting the evidence at trial despite the fact the officer, who removed the money from defendant’s pants and photocopied the bills, never even testified.
We will first address defendant’s challenge to the trial court’s denial of his motion to suppress evidence. Defendant argues that, although the police stated that the purpose for stopping him shortly after the drug sale was to learn his name, officers searched him and seized currency from him. He asserts that the State offered no basis to justify this search and seizure, and therefore, the trial court erred in denying the motion to suppress the *423 marked currency retrieved from defendant. For the reasons that follow, we find no merit to this argument.
| ¿Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120. A search incident to a lawful arrest is a well-recognized exception to a warrantless search. State v. Joseph, 02-717 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1051, writ denied, 04-2404 (La.6/17/05), 904 So.2d 686 (citing Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). By statute, a peace officer may lawfully arrest a person without a warrant when he has reasonable cause to believe that the person to be arrested has committed an offense. LSA-C.Cr.P. art. 213.
In a hearing on a motion to suppress, the State bears the burden of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. In determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, the appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
In the present case, Detective Joe Williams, a narcotics officer who was part of the surveillance team, was the only witness to testify at the suppression hearing. According to Williams, after the narcotics transaction was complete, the undercover officer broadcast the license plate of the vehicle involved. Pursuant to this information, Deputy Venezia, along with Detective Williams, stopped the vehicle that defendant was driving. After the vehicle was stopped, Deputy Venezia | Jilled out a field interview card on defendant. Although the details were not brought out, Deputy Venezia apparently found a piece of crack cocaine on defendant. At this time, defendant was arrested on the crack cocaine charge and not the marijuana transaction that had just occurred. When Deputy Venezia transported defendant for booking in reference to the crack cocaine offense, he photocopied the currency that was on defendant’s person and later gave the currency back to defendant. After listening to this testimony, the trial judge denied the motion to suppress finding no constitutional violations.
At trial, the testimony of Samuel Martin, the undercover officer, established that he had just conducted a narcotics transaction with defendant. When the undercover officer asked defendant for some “herb,” defendant went to a truck and returned with a white envelope. Defendant gave the officer this envelope which contained marijuana; and the officer, in exchange, gave defendant twenty dollars in U.S. currency.[2] As soon as defendant left the scene, the officer broadcast the license number of the vehicle that defendant was driving. Within minutes, police stopped the suspect vehicle.
*424 Given the totality of the circumstances, as adduced at the suppression hearing and at trial, we find no error in the trial court’s denial of defendant’s motion to suppress evidence. The officers clearly had probable cause to arrest defendant since he had just committed the crime of distribution of marijuana. Thus, the removal of currency from defendant’s possession was permissible as a search incident to a lawful arrest. It is of no consequence that defendant was not formally arrested for the marijuana offense at the time. See State v. Sherman, 05-0779 (La. 4/4/06), 931 So.2d 286, and State v. Franklin, 598 So.2d 1147 (La.App. 1 Cir.1992), writ denied, 604 So.2d 1317 (La.1992).
In the second portion of this assignment of error, defendant complains that the judge erred by allowing the prerecorded currency into evidence despite the fact Deputy Venezia, the officer who removed and photocopied the currency, never testified. Defendant specifically contends that an inadequate foundation was laid for the introduction of this evidence.
At trial, following the testimony of the undercover officer, a photocopy of the money was introduced into evidence as State’s Exhibit 4. During the testimony of Joe Williams, defendant objected, without specific reasons, to the introduction of the field interview card, a photograph, and the money found on the defendant at the time of the stop. Defendant now points to LSA-C.E. art. 901 and contends that the State failed to offer any foundation for the introduction of this evidence.
On appeal, a defendant is limited to the grounds for objection that he articulated in the trial court and a new basis for the objection may not be raised for the first time on appeal. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 594. Since defendant did not object to the introduction of the photocopied money on the ground of inadequate foundation, he is precluded from now raising the issue on appeal.
For the reasons set forth herein, we find no merit to the arguments raised by defendant in this assigned error.

ASSIGNMENT OF ERROR NUMBER TWO

In the second assigned error, appellate counsel argues that the trial judge improperly permitted an ex post facto application of La. R.S. 14:2(B) when he determined for the purposes of multiple offender sentencing that the predicate offense of attempted purse snatching was a crime of violence.
|sIn the present case, the State filed a multiple offender bill against defendant, alleging prior convictions for attempted purse snatching, attempted murder of a police officer, and first degree assault. After a hearing, the judge found defendant to be a triple offender based on two crimes of violence and a violation of the Uniform Controlled Dangerous Substances Law. He thereafter sentenced defendant to life imprisonment.
The pertinent portion of the habitual offender statute in question, LSA-R.S. 15:529.1(A)(l)(b)(ii), provides as follows:
If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be impris *425 oned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Defendant now argues that the finding that attempted purse snatching is a crime of violence is a prohibited ex post facto application of the law. Specifically, defendant asserts that when he committed the predicate offense of attempted purse snatching in 1987, it was not a crime of violence; and therefore, it cannot now be considered a crime of violence so as to enhance defendant’s sentence.
Both Article I, § 10 of the Constitution of the United States and Article I, § 23 of the Louisiana Constitution prohibit ex post facto application of the criminal law by the State. The focus of the ex post facto inquiry is whether a new law redefines criminal conduct or increases the penalty by which the crime is punishable. For purposes of analyzing the ex post fac-to implications of the Habitual Offender Law, the relevant offense is the current crime, not the predicate crime. State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272, 1280. Further, in State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, the Louisiana Supreme |9Court reiterated that it has consistently been held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer.
In State v. Mourra, 06-133 (La.App. 5 Cir. 8/29/06), 940 So.2d 29, this Court discussed the retroactivity of the statute that defines crimes of violence, LSA-R.S. 14:2. In Mourra, the defendant was charged with possession of a firearm by a convicted felon, which prohibits a person who has been convicted of a crime of violence as defined by LSA-R.S. 14:2(B) from possessing a firearm. In Mourra, the defendant’s predicate conviction was aggravated flight from an officer, which at the time of commission was not designated a crime of violence. On appeal, the defendant argued that the designation of the predicate offense as a crime of violence violated the ex post facto clause. This Court disagreed and held that there was no ex post facto violation and noted that the applicable law is that in effect at the time of the commission of the current offense and not the predicate crime. State v. Mourra, 940 So.2d at 33.
On the date of the commission of the offense charged in this case, June 28, 2007, the crime of attempted purse snatching was defined as a crime of violence by LSA-R.S. 14:2(B)(24). Since the applicable law is that in effect at the time of the commission of the current offense and not the predicate offense, we find no error in the trial court’s designation of the attempted purse snatching as a crime of violence. As such, there has been no ex post facto violation in this case; and this assigned error is likewise without merit.

ASSIGNMENT OF ERROR NUMBER THREE

In this assigned error, defendant complains that his appointed attorney was ineffective in connection with the multiple offender proceedings.
ImA criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To prove ineffective assistance of counsel, a defendant must show both that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94) 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055. An error is *426 considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, 636 So.2d at 1075.
Generally, an ineffective assistance of counsel claim is best addressed through an application for post-conviction relief filed in the trial court where a full eviden-tiary hearing can be conducted. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. In the present case, the record is adequate to address defendant’s claims.
Defendant’s claims regarding ineffectiveness of counsel relate to the multiple offender proceedings. Defendant first claims that his attorney should have conducted a defense to the multiple offender bill. Appellate counsel specifically claims that defendant’s attorney failed to file a traversal to the multiple bill, failed Into object to the introduction of the extraneous offense not charged on the multiple bill, failed to object to the underlying documentation “as not clear what offense was pleaded to in what case,” and failed to object to the prosecutor’s comments mis-characterizing the attempted purse snatching as a robbery. In order to address these claims of an inadequate defense, it is necessary to look at the evidence presented at the multiple offender hearing and to determine whether it was sufficient to support the trial court’s determination that defendant was a third felony offender.
To prove that defendant is a habitual offender, the State must initially prove the prior felony convictions and that defendant is the same person who was convicted of the felonies. The latter can be established by expert testimony matching the accused fingerprints with those in the record from the prior proceedings. State v. Kelly, 01-321 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 984, writ denied, 01-3266 (La.11/1/02), 828 So.2d 565. When the State relies on a prior conviction that is based on a guilty plea in proving defendant’s multiple offender status and defendant denies the multiple bill’s allegations, the State bears the burden of proving the existence of the prior guilty plea and that defendant was represented by counsel when they were taken. State v. Fleming, 04-1218 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 455, writ denied, 05-1715 (La.2/10/06), 924 So.2d 161.
In the amended multiple offender bill, the State listed three predicate convictions: a Louisiana conviction for attempted purse snatching, an Alabama conviction for the attempted murder of Officer Robert Thornton, and an Alabama conviction for first degree assault.
With regard to the Louisiana conviction, the State presented the testimony of Donald Tusa, the Jefferson Parish officer who investigated the case. In connection 112with his testimony, the State introduced the arrest report, the bill of information, the waiver of rights form, and the commitment. These documents showed that defendant pled guilty to attempted purse snatching on February 24, 1988, that defendant was represented by counsel, and *427 that defendant was advised of and voluntarily waived his constitutional rights.[3]
In regard to the Alabama convictions, the State offered the testimony of Officer Robert Thornton. In connection with his testimony, the State introduced the case action summaries of the Alabama convictions as well as the guilty plea forms for attempted murder, assault, and receipt of stolen property. These forms showed that defendant was represented by counsel when he entered his guilty pleas and was advised of and waived his constitutional rights.[4]
In addition, the State also presented the testimony of Aiseha Prudhomme, an expert in the field of latent fingerprint analysis. She testified that the fingerprints taken of defendant on the date of the hearing matched the fingerprints taken of defendant on the predicate offenses.
We have thoroughly reviewed the record of the multiple offender proceedings, including the testimony of the witnesses, the documents presented, the statements and comments of the judge, and the arguments and comments of the prosecutor and defense counsel. Based on our consideration of this evidence, we find that the State proved defendant’s multiple offender status; and therefore, the trial court was correct in its determination that defendant was a triple offender.
Further, with regard to counsel’s preparation and consultation with defendant, the record indicates that defense counsel had met with the prosecutor | Uiand received complete discovery prior to the multiple offender hearing. He stated that he had provided all documents to the defendant who had time to review them. We further note that throughout the proceedings, defense counsel consistently conferred with his client, reviewed the documentation, and specifically had no objection to the introduction of the evidence.
Appellate counsel also complains that trial counsel was ineffective for failing to object when the State did not establish that one of the underlying offenses was a felony. In order for a conviction from another state to serve as a predicate felony for enhancement purposes, the conviction must be for a “crime which, if committed in this State would be a felony. ...” LSA-R.S. 15:529.1(A)(1). Louisiana courts must determine the analogous state crime according to the nature of the act involved, not the penalty provided for the offense in the foreign jurisdiction. State v. Carouthers, 618 So.2d 880, 882 (La.1993). In this case, the testimony established that defendant fired six shots at a uniformed Alabama State Trooper. In connection with that Alabama offense, defendant pled guilty to the attempted murder of a police officer which is a felony in Louisiana. Accordingly, the State sufficiently established that the defendant committed a felony in Alabama.
Appellate counsel also complains that trial counsel was ineffective for failing to object to the purse snatching predicate being used as a crime of violence. We have already addressed this issue in the *428 previous assignment of error and have found it to be without merit.
In the final portion of this assignment of error, defendant argues that trial counsel was ineffective because he failed to move to reconsider sentence. In State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879, this Court observed:
| Hthe failure to file a motion to reconsider sentence does not preclude review of a sentence for constitutional excessiveness. Further, the mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. A basis for ineffective assistance of counsel may only be found if a defendant can “show a reasonable probability that but for counsel’s error, his sentence would have been different.”
On appeal, the defendant’s sentence could be challenged as excessive, thus allowing a consideration of the constitutionality of the sentence. However, neither the counseled nor pro se claims before the Court raised an issue of excessive sentence. We further note that the trial court was required by law to impose a life sentence. LSA-R.S. 15:529.1(A)(l)(b)(ii).
In sum, we have reviewed all of defendant’s allegations of ineffectiveness and find that defendant has not shown that his attorney’s performance was deficient or that the deficient performance prejudiced him. As such, we find no merit to defendant’s allegations of ineffectiveness.

ASSIGNMENT OF ERROR NUMBER FOUR

In this assigned error, defendant complains that the trial court erred in failing to issue written findings as to the multiple bill hearing as required by LSA-R.S. 15:529.1(D)(3). He concludes that without reasons, it cannot be determined which offenses were used to support the trial court’s determination that he was a triple offender; and therefore, he was denied his constitutional right to review. Defendant contends that a remand for clarification is warranted.
We first note that no contemporaneous objection was made to this alleged error. It was therefore not preserved for appellate review. LSA-C.Cr.P. art. 841; State v. Drummer, 99-857 (La.App. 4 Cir. 3/15/00), 756 So.2d 610, 613, writ denied, 00-1376 (La.4/20/01), 790 So.2d 14, and State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, 936, writ denied, 00-1101 (La.4/12/01), 790 So.2d 2.
| lsWe further note that even if there was error in the trial court’s failure to provide written reasons, defendant has failed to show that he was prejudiced. The State’s comments at the multiple offender hearing indicated that it was seeking to have defendant adjudicated a third felony offender based on the Louisiana conviction for attempted purse snatching and the Alabama conviction for attempted murder. Also, the State noted in the amended multiple offender bill of information that it was listing both Alabama felonies, the attempted murder and the first degree assault, out of an abundance of caution so as to avoid any confusion as to docket/case numbers, charges, and sentences imposed. Thus, defendant was not prejudiced by the trial court’s failure to assign written findings as to the multiple offender hearing. This assigned error is without merit.

PRO SE ASSIGNMENT OF ERROR

In addition to the counseled brief filed on defendant’s behalf, defendant filed a pro se brief alleging that the trial court erred in denying his motion to suppress the identification. Defendant specifically argues that the photographic lineup shown *429 to the undercover officer was unduly suggestive because two of the individuals in the lineup appear to be older than the others. He also complains that the lineup was generated by a computer and not a human being.
The defendant generally bears the burden of proof on a motion to suppress an out-of-court identification. LSA-C.Cr.P. art. 703(D). In order to suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d 1219, 1232, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). A photographic lineup is considered suggestive if the photographs display the defendant in such a manner that the witness’ attention is unduly focused on the defendant. A lineup is also suggestive if there is not a sufficient resemblance of characteristics and | TBfeatures of the persons in the lineup. However, strict identity of physical characteristics among the persons depicted in the photographic array is not required; all that is required is a sufficient resemblance to reasonably test the identification. State v. Every, 96-185 (La.App. 5 Cir 7/30/96), 678 So.2d 952, 957.
If an identification procedure is suggestive, the defendant must also show there was a substantial likelihood of mis-identifieation as a result of the identification procedure. State v. Higgins 898 So.2d at 1233. Under the standard set in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of mis-identification include: the witness’ opportunity to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. State v. Higgins, 898 So.2d at 1233.
In the instant case, the photographic lineup consisted of six photographs of black males. From our examination of the lineup, it appears that the physical characteristics, including the haircuts, the skin color, and the eyes, were sufficiently matched to reasonably test the identification. In addition, although defendant claims that two of the suspects look considerably older than the others, Detective Williams testified that the photographs were computer generated based on the features and the age of the suspect. He stated that he put in “the year that defendant was born, and it just generated the photographs around that age.” In our opinion, there is nothing depicted in the photographs that would unduly focus the officer’s attention on defendant’s photograph.
We further note that even if the lineup is considered suggestive, it cannot be said that there was a substantial likelihood of misidentification in this case. The 117undercover officer got a close look at defendant when he approached the car window for the drug transaction. Moreover, defendant’s face was captured on the videotape that was in the officer’s vehicle. The officer immediately broadcast the license plate of the vehicle, and defendant was stopped within minutes of the transaction driving the suspect vehicle. Moreover, the officer viewed the photographic lineup within three hours of the transaction.
Accordingly, we find no error in the trial court’s denial of defendant’s motion to suppress identification. This assignment of error is without merit.

*430
ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Onr review reveals no errors which require corrective action.
For the reasons set forth herein, we affirm defendant’s conviction for distribution of marijuana as well as the life sentence imposed pursuant to the multiple offender proceedings.

CONVICTION AND SENTENCE AFFIRMED.

JASMINE, J., dissents.

. The narcotics transaction was captured on videotape which was played for the jury.

. At trial, Detective Williams testified that he compared the serial number of the pre-re-corded twenty dollar bill used for the narcotics buy with that taken from defendant after the sale of the marijuana; and he concluded that the serial numbers matched.

. Although the prosecutor mistakenly referred to the attempted purse snatching as a robbery, the introduction of the documents clearly showed that the predicate offense was attempted purse snatching.

. The three Alabama guilty pleas were entered on the same date and arose from the same criminal episode. Admittedly, it was not necessary for the State to enter all three Alabama convictions. However, the trial judge only used one of the Alabama convictions for enhancement purposes; and therefore, it cannot be said that defendant was prejudiced by the introduction of the Alabama offense that was not listed in the multiple bill.