SUSAN M. CHEHARDY, Chief Judge.
|2On November 2, 2012, C.M.,[1] a 16-year-old[2] juvenile, was charged by petition in juvenile court with violation of La. R.S. 14:95.8, illegal possession of a handgun by a juvenile, alleged to have occurred on October 28, 2012. On November 5, 2012, C.M. entered a denial to the charged offense. C.M. proceeded to trial on November 28, 2012, and was adjudicated delinquent. A disposition hearing was held on January 10, 2013, at which time C.M. received a six-month sentence, to be served with the Office of Juvenile Justice in non-secure placement.[3]
On January 15, 2013, C.M. filed a timely motion for appeal, which was granted by the juvenile court. We affirm, but remand with orders to correct patent errors.
FACTS
C.M.’s mother testified that on October 28, 2012, C.M. had spent the weekend with her. His father did not come to get him, so she dropped C.M. off at phis father’s house. C.M. had a backpack with him when he exited his mother’s car. Before approaching the house, C.M. put his back *1123 pack in his father’s truck, which was parked in the driveway. S.M. testified that when C.M. knocked on the door, she observed someone open the door and then “slam it” in C.M.’s face. C.M. again knocked on the door, which was answered this time by his father. Both C.M. and his father went inside the house.
According to S.M., approximately two minutes later C.M. exited the house, visibly upset. S.M. testified that C.M. kicked or punched his father’s truck, which prompted his father to pull out an aluminum baseball bat from the back of the truck and strike C.M. on the arm with it.[4] S.M., who was still parked in the street in front of the residence, got out of her car to confront C.M.’s father. C.M. got up from where he had fallen in the yard after his father had struck him, opened the gate leading out of the driveway, proceeded to the other side of S.M.’s double-parked car and lay in the grass. S.M. and C.M.’s father “exchanged words” for “about a minute and a half’ before his father went back inside his house, where he remained.
S.M. then went by her car to check on her son. When C.M. stood up she observed, for the first time, a gun in C.M.’s hand. She testified she did not see C.M. with the gun while he was kicking his father’s truck or when his father struck C.M.’s arm with the bat. S.M. testified that C.M. never pointed the gun at his father because “by the time he [C.M.] came around the car, his dad had done made it up the steps and into the house.”
S.M. asked C.M. to give her the gun, but C.M. put the gun in his right back pocket and ran down the street away from his father’s home. By the time S.M. |4caught up with C.M., a sheriffs deputy had arrived on the scene. The officer stopped C.M., at which time S.M. reached into C.M.’s right back pocket, pulled out the gun, and handed it to the deputy.
Deputy Andrew Mulino of the Jefferson Parish Sheriffs Office testified he placed C.M. under arrest and advised him of his Miranda[5] rights. He transported C.M. to the hospital, due to complaints that his arm was hurting him since his father hit it with a baseball bat. While at the hospital, C.M. told Deputy Mulino that he had placed the gun in his father’s truck before the incident occurred. C.M. said he took the weapon out of the truck after he was struck with the bat. C.M. explained he made an emotional decision that he knew was wrong. C.M. never indicated to Deputy Mulino that he was using the weapon to defend himself, and further stated that he never took the gun out of his back pocket.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the appellant asserts that the State failed to establish each element of the offense beyond a reasonable doubt. Specifically, he contends that the trial judge erred not only in adjudicating C.M. delinquent without proof of age, but also in not finding that C.M. was justified in having the weapon on his person.
C.M. argues the State failed to prove beyond a reasonable doubt that he was under the age of 17 at the time of the offense. C.M. contends that the only reference to his age was made at the beginning of the adjudication hearing, when the *1124 trial judge asked him to state his name and date of birth for the record. C.M. argues that this statement is insufficient evidence because it was not made under oath and because the hearing on the merits of the case had not yet begun. Since the State failed to offer any other evidence as to C.M.’s age at trial, C.M. contends the | fiState failed to prove that he committed the crime of possession of a handgun by a juvenile beyond a reasonable doubt.
C.M. also argues that he was justified in arming himself with the gun in self-defense. C.M. maintains that the trial testimony established he had a right to defend himself and his mother against any further attack by his father and, thus, he was justified in arming himself with the gun.
In response, the State argues it proved beyond a reasonable doubt that C.M. knowingly possessed a handgun on his person and that C.M. was not acting in justifiable self-defense when he armed himself. First, the State submits that it proved C.M. was 16 years old at the time he committed the offense, as established during trial and at prior proceedings where C.M. identified his date of birth for the juvenile court. The State further submits that C.M.’s date of birth is an adjudicative fact that was known to the court at the time of trial. The State contends that under La. C.E. art. 201, the court can take judicial notice of an adjudicative fact sua sponte. The State further submits that the juvenile court, as the sole fact-finder, can judicially notice C.M.’s age as evidence presented to it in earlier proceedings of the same case.
Second, the State argues it proved that C.M. knowingly possessed a handgun on his person, as evidenced by the testimony of Deputy Mulino and S.M., who testified that C.M. was carrying the gun in his pocket. Finally, the State argues that C.M.’s actions do not support a claim of self-defense. The State contends that the altercation with C.M.’s father had ended by the time C.M. retrieved the gun from the truck. Moreover, the State maintains that C.M. possessed the gun long before the encounter with his father, and at a time when there was no evidence that his father posed a threat to him.
IfiC.M. filed a reply brief, in which he argues that the mere mention of a date is insufficient to prove beyond a reasonable doubt that he was a juvenile at the time of the commission of the offense. He further states that La. C.E. art. 201 only requires a court to take judicial notice of an adjudicative fact when a request to do so is made. Here, C.M. argues that no request was made and that the trial judge did not notify the parties of its intent to take notice of the fact. Thus, C.M. asserts that no evidence was submitted to prove the statutory age requirement.
“In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition.” La. Ch.C. art. 883. The constitutional standard for testing the sufficiency of evidence in delinquency proceedings, as in criminal proceedings against an adult, requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State ex reí. D.W., 09-855, p. 6 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048,1053.
In a juvenile delinquency proceeding, the State’s burden of proof is the same as in a criminal proceeding against an adult, to prove beyond a reasonable doubt every *1125 element of the offense alleged in the petition. Id.
The rule as to circumstantial evidence is that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten, 99-181, p. 4 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. | Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
In juvenile proceedings, the scope of review on appeal extends to both law and facts. See La. Const, art. V, § 10(B); State in the Interest of D.F., 08-0182, p. 5 (La.App. 1 Cir. 6/6/08), 991 So.2d 1082, 1084, 1085, writ denied, 08-1540 (La.3/27/09), 5 So.3d 138. The Louisiana Fourth Circuit Court of Appeal has held that the “clearly wrong-manifest error” standard of review should be used to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. State ex rel. C.N., 11-0074, p. 5 (La.App. 4 Cir. 6/29/11), 69 So.3d 711, 714.
Although appellate review of juvenile cases extends to law and fact, the juvenile judge observes the conduct and demeanor of the witnesses and is thus in a far better position to determine credibility and weigh the evidence. State ex rel. C.J., 10-1588, pp. 3-4 (La.App. 4 Cir. 4/20/11), 63 So.3d 1133, 1137 (quotations omitted). Therefore, the appellate court should afford great deference to the judge’s findings of fact and to the judge’s determination of witness credibility and weight to be given their testimonies. Id.
Age of C.M.
C.M. was adjudicated delinquent for illegal possession of a firearm by a juvenile, a violation of La. R.S. 14:95.8. The statute states, “It is unlawful for any person who has not attained the age of 17 years knowingly to possess any handgun on his person.” La. R.S. 14:95.8(A).
Pursuant to La. R.S. 14:95.8(A), an adjudication of a juvenile as delinquent for illegal possession of a handgun requires a finding, that the juvenile had actual, not merely constructive, possession of a gun. State in Interest of R.D., 2012-0619, IsP- 4 (La.App. 4 Cir. 10/3/12), 126 So.3d 504, 2012 WL 4711876, writ denied, 12-2495 (La.4/19/13), 111 So.3d 1030.
On appeal, C.M. complains that the State failed to prove an essential element of the charged offense, namely, that C.M. was under the age of 17 at the time of the offense.
In State in the Interest of Metoyer, 606 So.2d 74, 76 (La.App. 3 Cir.1992), the juvenile argued on appeal that the juvenile court did not have jurisdiction over him because there was no proof he was under the age of 17. However, the record contained the juvenile’s age in the petition for adjudication, as well as in two earlier petitions for adjudication involving that child, with whom the juvenile court was very familiar. Although the juvenile made an oral motion for acquittal at trial, which the appellate court treated as a motion to dismiss, the appellate court found the juvenile court did not err in the denial of the motion, finding proof of the child’s age so as to permit the court to exercise jurisdiction. Id.
Likewise, in State v. D.L., 29,789, pp. 5-6 (La.App. 2 Cir. 6/18/97), 697 So.2d 706, 709-710, the juvenile contended that the *1126 State failed to establish jurisdiction of the juvenile court because it failed to establish his age during its case-in-chief. Citing State in the Interest ofMetoyer, supra, the appellate court found that no error patent occurred where the juvenile’s age was included in the delinquency petition but not presented at the hearing. The court noted that the juvenile did not move to dismiss the proceedings on the basis of lack of jurisdiction due to his age, nor did he present any evidence that contradicted the State’s allegation of his age. Id.
In the matter before us, the State alleged in the petition that on October 28, 2012, C.M., a child under the age of 17 years old, did knowingly possess a handgun. Further, at the commencement of trial, when the juvenile judge asked all laparties to identify themselves on the record, C.M. said his name and then stated his date of birth as January 6,1996. Deputy Mulino testified that the incident occurred on October 28, 2012. Therefore, we find the record shows that C.M. was 16 years old at the time of the offense and, thus, it was unlawful for him to possess any handgun on his person under La. R.S. 14:95.8.[6]
In addition to identifying his date of birth prior to trial, C.M. also identified his date of birth as January 6, 1996, at the probable cause hearing conducted in this case before the same juvenile judge on October 80, 2012. Moreover, when C.M. was charged with the subject offense, he was on probation for an unrelated offense, simple criminal damage to property (violation of La. R.S. 14:56), under docket number 09JU695 (“Complaint C”).
A review of the appellate record indicates that the juvenile judge who presided over this matter also presided over the proceeding in docket number 09JU695. At every hearing in the prior proceeding, C.M. also identified his date of birth as January 6, 1996.[7] In particular, at a constructive contempt hearing held on May 31, 2012, C.M. testified under oath that by the start of the school year in August of 2012, he would still be 16 years old. The incident on which this proceeding is based occurred in October 2012, approximately two months before C.M.’s seventeenth birthday. In addition, C.M.’s age in the petition for adjudication, along with the petition for adjudication in the proceeding for simple criminal damage to property, matches the date of birth provided by C.M.[8]
|10In a bench trial, as the sole trier of fact the juvenile court may take judicial notice of C.M.’s age as evidence presented to it in prior proceedings involving the same juvenile with whom the court is very *1127 familiar, whether evidenced by a minute entry, a transcript, or a written judgment. See State v. Farhood, 02-490, p. 28 (La. App. 5 Cir. 3/25/03), 844 So.2d 217, 235; see also, State v. Valentine, 397 So.2d 1299 (La.1981); State v. Augillard, 371 So.2d 798, 800 (La.1979).
 Moreover, a court may take judicial notice of adjudicative facts, whether requested or not. La. C.E. art. 201(C); State v. Batiste, 96-0526, p. 7 (La.App. 3 Cir. 12/11/96), 687 So.2d 499, 503, wii denied, 97-0174 (La.6/30/97, 696 So.2d 1003). A judicially-noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. La. C.E. art. 201(B); Batiste, supra. Here, the court record is a source whose accuracy cannot reasonably be questioned, nor can the documentation of C.M.’s age contained therein reasonably be questioned.
Accordingly, we hold that the juvenile judge could have found the evidence was sufficient to prove that C.M. was under the age of 17 when he committed the instant offense, where the uncontroverted evidence established C.M.’s birth date as January 6,1996.
Self-Defense
Next, C.M. argues that he was justified in possessing the gun in self-defense against his father who had just struck him with a baseball bat.
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18.
|nThe use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A).
The aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person. La. R.S. 14:22.
When self-defense or the defense of another is claimed by the defendant in a homicide case, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense or in defense of another. State v. Rainey, 98-436, p. 12 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1103, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28. However, in non-homicide cases, this Court has stated that the defendant has the burden of proof by a preponderance of the evidence that his actions were in self-defense or in defense of others. See State v. Nailor, 10-1062, p. 8 (La.App. 5 Cir. 11/15/11), 78 So.3d 816, 821, writ denied, 11-2780 (La.4/27/12), 86 So.3d 626; State v. Steele, 01-1414, p. 8 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 547, writ denied, 02-2992 (La.9/19/03), 853 So.2d 632; State v. Barnes, 491 So.2d 42, 47 (La.App. 5 Cir. 1986).
In this case, the testimony indicates that C.M. possessed the gun before the altercation with his father took place. *1128 S.M. said that when she dropped C.M. off at his father’s house he had a backpack with him, which C.M. placed in his father’s | struck before entering the house. C.M. also admitted to Deputy Mulino that he had placed the gun in his father’s truck before the altercation with his father occurred. The possession of the gun by C.M. before the altercation weighs against a finding of self-defense, when there was no evidence presented that his father posed a threat at that time.
In addition, the testimony at trial established that a few minutes after entering his father’s house, C.M. exited the house and began kicking his father’s truck. In response, his father came outside, picked up a baseball bat from inside his truck, and struck C.M. once on the arm. S.M. testified that she did not see C.M. with the gun when C.M.’s father struck him with the bat. C.M. did not use the gun or threaten to use it against his father. Rather, after being struck, C.M. left his father in the yard, exited the gated driveway, walked around his mother’s car which was double parked in the street, and lay in the grass. By then C.M.’s father had already re-entered the house. When S.M. went to check on her son, she observed he had a gun in his hand.
The testimony establishes that the altercation had already ended when C.M. retrieved the gun. C.M.’s father did not follow him with the bat, but rather retreated back into his house and stayed there, after exchanging a few words with C.M.’s mother. Moreover, it appears that C.M. was not in imminent peril of being struck again after the altercation, since C.M. had distanced himself from his father, who was in the yard behind a gate. Further, after C.M.’s father had re-entered his home, C.M. refused to tender possession of the gun to his mother. Instead, C.M. placed the gun in his back pocket and ran down the street.
Deputy Mulino also testified that C.M. never indicated to him that he was using the gun to defend himself, that he never pointed the gun at his father, and that he never took it out of his back pocket.
11SC.M. also argues that he was justified in arming himself with the gun in defense of his mother. The record is devoid of evidence that C.M.’s father posed a threat to S.M. In fact, S.M. described her interaction with C.M.’s father as an “exchange of words” for a brief period before he went back into his home. Nothing in the record suggests that S.M. felt she was in danger or that C.M.’s father physically threatened her.
When a person who is otherwise statutorily barred from possessing a firearm is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense or in defense of others. See, generally, State v. Blache, 480 So.2d 304, 308 (La.1985); State v. Sanchell, 2011-1672, p. 8 (La.App. 4 Cir. 10/31/12), 103 So.3d 677, writ denied, 12-2554 (La.4/26/13), 112 So.3d 839; State v. Goldsmith, 519 So.2d 299, 300 (La.App. 2 Cir.1988). See also, State v. Dabney, 2002-0934, p. 7 (La.4/9/03), 842 So.2d 326. In the case before us, it appears that C.M. possessed the gun longer than was necessary to use it in self-defense (both before and after the altercation).
C.M. cites State v. Landry, 381 So.2d 462 (La.1980), in support of his position that his conduct constituted justifiable self-defense. In Landry, the defendant (a school teacher) and the victim (a student) were in an altercation on school premises. The victim ultimately was restrained and *1129 was asked to leave the building. Shortly thereafter, the victim returned with a club, which he used to strike at the defendant. The defendant retreated from the school building with the victim still in pursuit. The victim again attempted to strike the defendant as the defendant was escaping. The defendant fled to the parking lot, where he armed himself with a handgun that he obtained from his vehicle. The victim approached the defendant’s general direction, still carrying the club.
|14In Landry, the Louisiana Supreme Court found it was subjectively reasonable for the defendant to conclude that the victim was intent upon continuing the prior attack against him. 381 So.2d at 467. The Court held it was reasonable for the defendant, “having just been subjected to a violent armed assault,” to conclude upon seeing the victim approaching in his direction, still carrying the weapon, that the victim’s purpose was to carry out his previously-demonstrated intent to inflict serious bodily harm upon the defendant. Id. Thus, the Court held, the defendant had “ample reason to fear imminent serious personal harm at the hands of’ the victim. Id.
Landry is distinguishable from the case before us, however. In this case C.M.’s father struck C.M. once on the arm with a bat, in response to C.M. kicking his truck. His father did not chase after him with the bat, but rather retreated back inside his home after the altercation. The evidence does not suggest that C.M.’s father was intent upon continuing the initial battery, because C.M. had retreated some distance away and C.M.’s father had gone inside his home.
We find no merit to Assignment of Error Number One. First, the evidence was sufficient to prove that C.M. was under the age of 17 when he committed the instant offense. Second, by adjudicating C.M. delinquent, the juvenile judge obviously rejected C.M.’s theory of self-defense and/or defense of others, and found that C.M.’s actions were neither reasonable nor apparently necessary. Based on the evidence, we find that the trial court reasonably rejected C.M.’s self-defense claim.
| ^ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, C.M. claims that the statute under which he was adjudicated delinquent, La. R.S. 14:95.8, is unconstitutional.[9] C.M. argues that La. R.S. 14:95.8 as enacted violates the Louisiana Constitution, under both the prior and amended versions of the right to bear arms provision set forth under La. Const. Art. 1, § 11. C.M. further contends that La. R.S. 14:95.8 violates the Fourteenth Amendment of the United States Constitution.
In response, the State submits that because C.M. did not properly challenge the constitutionality of La. R.S. 14:95.8 in the trial court, his constitutional attack should not be considered by this Court on appeal. Alternatively, the State argues that La. R.S. 14:95.8 is not unconstitutional and does not violate the Louisiana Constitution as enacted, either prior to or after the right to bear arms provision was amended.
Article 1, § 11 of the Louisiana Constitution formerly provided: “The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.”
*1130 Pursuant to Acts 2012, No. 874, § 1, a proposal to amend La. Const. Art. 1, Sec. 11 was submitted to the electors of the State of Louisiana, and was ratified by them at the statewide election held on November 6, 2012. The amendment to this section became effective on December 10, 2012. Section 11 now provides, “The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction on this right shall be subject to strict scrutiny.”
I^On appeal, C.M. argues for the first time that La. R.S. 14:95.8, which prohibits a juvenile from carrying a firearm (with the exception of certain enumerated exceptions) would be unconstitutional under both the former and amended constitutional provisions.
While there is no single procedure for attacking the constitutionality of a statute, the Louisiana Supreme Court has described the challenger’s burden as a three-step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. Vallo v. Gayle Oil Co., Inc., 94-1238, p. 8 (La.11/30/94), 646 So.2d 859, 864-865; See also State v. Hatton, 07-2377, p. 13 (La.7/1/08), 985 So.2d 709, 718-719.
The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. State v. Schoening, 00-0903, p. 3 (La.10/17/00), 770 So.2d 762, 764 (citing Vallo, 94-1238 at 8, 646 So.2d at 865). The opportunity to fully brief and argue the constitutional issues provides the trial court with thoughtful and complete arguments relating to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to consider the constitutionality of the statute. Id.
In addition to the three-step analysis for challenging the constitutionality of a statute, the specific plea of unconstitutionality and the grounds therefor must be raised in a pleading. See Schoening, supra, 00-0903 at 4, 770 So.2d at 765; Williams v. State, Dept, of Health and Hospitals, 95-0713, p. 6 (La.1/26/96), 671 So.2d 899, 902; State v. Campbell, 263 La. 1058, 270 So.2d 506 (1972); State v. Herring, 211 La. 1083, 31 So.2d 218, 219-20 (1947).
117The longstanding Louisiana jurisprudential rule is that litigants must raise constitutional attacks in the trial court, not the appellate courts, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized. Unwired Telecom Corp. v. Parish of Cal-casieu, 03-0732, p. 6 n. 5 (La.1/19/05), 903 So.2d 392, 399 n. 5 (on rehearing). There are exceptions to the general rule, but none of them apply in this case.[10]
In this case, C.M. failed to raise his constitutional challenge to La. R.S. 14:95.8 in the trial court and he has not alleged an exception to the general rule by which a litigant must properly confect a constitu *1131 tional challenge. Thus, we pretermit review on the merits of his constitutional claim.[11] See generally, State v. Rubens, 2010-1114, pp. 29-30 (La.App. 4 Cir. 11/30/11), 83 So.3d 30, 50, units denied, 12-374 (La.5/25/12), 90 So.3d 410 and 12-399 (La.10/12/12), 99 So.3d 37, cert, denied,U.S.-, 133 S.Ct. 1595, 185 L.Ed.2d 591 (2013).
Accordingly, we find no merit to Assignment of Error Number Two.
ASSIGNMENT OF ERROR NUMBER THREE
In his final assignment of error, C.M. asserts he was denied the effective assistance of counsel guaranteed to him by the Sixth Amendment. He argues that his trial counsel was ineffective because (1) he failed to raise and argue the constitutionality of La. R.S. 14:95.8 by filing either a motion to quash prior to the adjudication, or a motion to vacate prior to the disposition, and (2) he did not seek a dismissal when the State failed to establish the elements of the offense.
The State responds that C.M.’s trial counsel was not ineffective.
11sGeneraIly, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than on direct appeal, so as to afford the parties an adequate record for review. State v. Robertson, 08-297, p. 12 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659, unit denied, 08-2962 (La.10/9/09), 18 So.3d 1279. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Grimes, 09-2, p. 10 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 426, writ denied, 09-1517 (La.3/12/10), 28 So.3d 1023.
We find that the appellate record is adequate for this Court to address C.M.’s claims.
La. Ch.C. art. 809(A) provides, “At every stage of proceedings under this Title, the accused child shall be entitled to counsel.” Juvenile defendants as well as adults are entitled to effective assistance of counsel. State in Interest of D. McK, 589 So.2d 1139, 1142 (La.App. 5 Cir.1991). Effective assistance of counsel is guaranteed under the Sixth Amendment to the United States Constitution and Article I, Sec. 13 of the Louisiana Constitution. Grimes, 09-2 at 10, 16 So.3d at 425. To prove ineffective assistance of counsel, a defendant must show both that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him. Id., citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). It is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La.App. 1 Cir.1992), unit denied, 614 So.2d 1263 (La.1993).
To establish the deficiency prong of the test, the defendant must show that counsel made errors so serious that he was not functioning as the “counsel” 1^guaranteed by the Constitution. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, the defendant must show that the errors were so serious that the defendant was deprived of a fair trial, a trial whose result is reliable. Id. The defendant must prove actual prejudice before relief will be granted. Serigny, 610 *1132 So.2d at 860. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id. Rather, he must show that but for counsel’s deficient performance, there is a reasonable probability the outcome of the trial would have been different. State v. Robinson, 01-1305, p. 18 (La.App. 4 Cir. 4/17/02), 820 So.2d 571, 582, writ denied, 02-1640 (La.5/30/03), 845 So.2d 1068.
Constitutionality of La. R.S. 14:95.8
C.M. argues that his trial counsel was ineffective for failing to assert that La. R.S. 14:95.8 was unconstitutional, as it violated Article I, § 11 of the Constitution of the State of Louisiana and the Fourteenth Amendment of the Constitution of the United States. He contends that if this statute was declared unconstitutional, there would be no basis for an adjudication. C.M. argues that the statute restricts a juvenile’s right to carry a handgun without sufficient state interest to infringe upon the juvenile’s right to do so. C.M. further contends that the statute was not exempted from Article I, § 11 of the 1974 Constitution and that it does not pass strict scrutiny under the 2012 provision of this article. He asserts that all juveniles are not treated equally, as some juveniles are allowed to carry handguns and some are not. He argues that since the statute classifies an offender based on his age, it presumptively denies equal protection of the laws and, thus, is presumed unconstitutional.
The State responds that the juvenile’s trial counsel was not ineffective because it is unlikely such a constitutional challenge in the juvenile court would [ 2nhave succeeded, as the statute is not unconstitutional. The State contends that a similar statute has been upheld under the former Louisiana Constitution; that the statute would survive strict scrutiny analysis under the new amendment; that juveniles do not enjoy the same constitutional protection as adults; that the statute is narrowly tailored to address a compelling state interest; and that the statute does not violate the equal protection clause.
The right to bear arms is established by the Second Amendment to the United States Constitution and Article I, § 11 of the Louisiana Constitution. The State of Louisiana is entitled to regulate that right for legitimate state purposes, such as public health and safety. State v. Sandifer, 95-2226, p. 13 (La.9/5/96), 679 So.2d 1324,1333.
As previously noted, La. Const. Art. 1, §11 formerly provided that “the right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” La. Const. Art. 1, § 11 was amended by statewide election on November 6, 2012, and now provides that “the right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction on this right shall be subject to strict scrutiny.” La. Const. Art. 1, § 11, as amended by Acts 2012, No. 874, § 1, effective December 10, 2012.
Here, C.M. committed the instant offense on October 28, 2012. C.M. was adjudicated delinquent on November 28, 2012, and was sentenced on January 10, 2013. Thus, the offense was committed before the amendment was ratified on November 6, 2012, and before its effective date of December 10, 2012. Since the offense and the adjudication occurred before the effective date of the amendment, there is a question as to whether the new 2012 amendment to La. Const. Art. 1, § 11 could apply to this case.
*1133 la/Tn the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.” La. C.C. art. 6. Generally, new laws which are procedural or interpretive may apply retroactively to a cause of action which arose prior to the law’s effective date. Jacobs v. City of Bunkie, 98-2510, p. 7 (La.5/18/99), 737 So.2d 14, 20.
The Louisiana Legislature did not address the issue of whether this amendment to La. Const. Art. 1, § 11 was to have prospective or retroactive application. We need not reach a conclusion on this issue, however, because C.M.’s argument alleging ineffective assistance of counsel must fail.
First, C.M.’s counsel could not have been ineffective for failing to file a motion to quash prior to C.M.’s adjudication, because C.M. committed the offense and was adjudicated delinquent before the amendment’s December 2012 effective date. Such a motion to quash would have alleged the uneonstitutionality of a statute under a new constitutional amendment that was not yet in effect. Thus, such a challenge would have been premature.
Moreover, C.M.’s counsel could not have been ineffective for failing to file a motion to vacate based on constitutional grounds prior to C.M.’s disposition on January 10, 2018, because such grounds would not support the grounds for vacation under La. Ch.C. art. 887.[12] Therefore, we pretermit discussion on whether l22C.M.’s counsel was ineffective for failing to challenge the constitutionality of La. R.S. 14:95.8 under the amended constitutional right to bear arms provision.
Dismissal Based on Insufficient Evidence
C.M. also argues that his trial counsel was ineffective for failing to seek a “dismissal” when the State failed to establish an element of the offense, C.M.’s age, beyond a reasonable doubt. As discussed more fully under Assignment of Error Number One, we hold that a rational trier of fact could have found that the evidence was sufficient to convict C.M. of violating La. R.S. 14:95.8 under the Jackson standard, and that the trial court properly *1134 rejected C.M.’s justification claim. Therefore, we find that C.M.’s trial counsel was not ineffective for failing to file a motion to vacate the adjudication under La. Ch.C. art. 887.
Accordingly, we find no merit to Assignment of Error Number Three.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent.[13] La.C.Cr.P.art. 920; State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Wetland, 556 So.2d 175, 178 (La.App. 5 Cir.1990). We note several patent errors:
First, a review of the record reveals that the trial judge failed to advise C.M. of the two-year prescriptive period for seeking post-conviction relief as mandated by La.C.Cr.P. art. 930.8. Therefore, we shall remand the matter to the juvenile court with appropriate instructions, and instruct the court to inform the juvenile in 1^writing of the delays for post-conviction relief and to file proof of the notice in the record.
Second, the record fails to show that C.M. was advised of his rights when he appeared to answer the allegations contained in the petition filed against him, as required by La. Ch.C. art. 855.[14] However, in this case, this is harmless error. The record reflects that C.M. was represented by counsel when he appeared in court, and that he denied the charge against him. Thus, C.M.’s rights were adequately protected, and the fact that he was not so advised caused him no prejudice in connection with his rights.
Third, pursuant to La. Ch.C. art. 899 and La. R.S. 14.95.8, C.M. was sentenced to the Office of Juvenile Justice for six months, non-secure placement. However, the trial court failed to impose the mandatory fine under La. R.S. 14:95.8,[15] rendering C.M.’s sentence illegally lenient.
This Court has the authority to correct an illegal sentence at any time. La.C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. State v. Pitt, 09-1054, p. 8 (La.App. 5 Cir. 4/27/10), 40 So.3d 219, 224, writ denied, 10-1141 (La.12/10/10), 51 So.3d 725.
In State v. Guidry, 12-296, p. 10 (La.App. 5 Cir. 12/11/12), 106 So.3d 1062, 1067-1068, and State v. Campbell, 08-1226, p. 9 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842, this Court noted the defendants’ indigent status and declined to correct their illegally lenient sentences where the district court failed to impose the mandatory fine.
I^In the present case, due to C.M.’s indigent status,[16] we decline to exercise *1135 our authority to correct the illegally lenient sentence.
Fourth, the trial court failed to give C.M. credit for time served. Neither the transcript nor the commitment indicate that C.M. was given credit for time served. La. Ch.C. art. 898(A) states, “The court shall give a child credit for time spent in secure detention prior to the imposition of disposition.” Since this article is mandatory, C.M. is entitled to credit for time served. Therefore, we shall remand the case with instructions. State v. C.K., Oh-475, p. 9 (La.App. 5 Cir. 1/17/06), 922 So.2d 616, 621; State ex reí. T.S., 04-1111, p. 9 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 82; State v. J.M., 96-801, p. 5 (La.App. 5 Cir. 1/15/97), 687 So.2d 136, 140, twit denied, 97-0734 (La.11/21/97), 703 So.2d 1298.
DECREE
For the foregoing reasons, the delinquency adjudication and commitment are affirmed. The matter is remanded and the juvenile court is ordered to inform the juvenile in writing of the delays for post-conviction relief, and to file proof of the notice in the record. The juvenile court further is ordered to amend the commitment to give C.M. credit for time served in secure detention prior to the disposition, if any.

AFFIRMED AND REMANDED WITH ORDERS.

JOHNSON, J., dissents with reasons.

. Pursuant to the requirements of confidentiality of juvenile proceedings as set forth in La. Ch.C. art. 412, the juvenile and his relatives herein are referred to by initials only.

. The record indicates that C.M.'s date of birth is January 6, 1996.

. At the time C.M. was charged with the subject offense, he was on probation pursuant to a delinquency adjudication for an unrelated charge of simple criminal damage to property (La. R.S. 14:56), docket number 09JU695 ("Complaint C”). On December 7, 2012, C.M.'s probation officer filed a Motion to Modify Judgment of Disposition and Revocation of Probation based on C.M.’s adjudication of delinquency for the instant illegal possession of a firearm offense. At the same time as the disposition hearing in this case, C.M.’s probation officer dismissed her revocation of probation request to allow for C.M. to be placed in non-secure placement. Thus, on January 10, 2013, the juvenile court judge also committed C.M. to the Office of Juvenile Justice for a period of six months in non-secure placement for his previous delinquency adjudication for simple criminal damage to property. The juvenile court judge ordered that C.M.’s six-month sentences for simple criminal damage to property and illegal possession of a handgun by a juvenile be served consecutively.

. S.M. testified that she saw fear on C.M.’s face when his father hit him with the bat. S.M. further testified that she had never seen that type of behavior between C.M. and his father before and that she and C.M. were both surprised when it happened.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. The Louisiana Children's Code defines a "child” as "any person under the age of twenty-one, including an emancipated minor, who commits a delinquent act before attaining seventeen years of age.” La. Ch.C. art. 804(1). There are recent amendments regarding gun possession, but those do not apply to the referenced definition.

. In addition to the hearings conducted in the prior proceeding, the record also contains various documents that record C.M.’s date of birth. These include minute entries, judgments, adjudication orders, probable cause affidavits for arrests, probation officers’ reports, and psychological evaluations.

.Notably, C.M. was tried for his crime in juvenile court without objection. The juvenile did not move to dismiss the proceedings on the basis of lack of jurisdiction due to his age, nor did he present any evidence that contradicted the State's allegation of his age. See State in the Interest of Metoyer, supra; State v. Zihtavsky, 505 So.2d 761 (La.App. 2 Cir. 1987), writ denied, 511 So.2d 1152 (La. 1987); State v. Zeringue, 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, writ denied, 03-3523 (La.4/23/04), 870 So.2d 298.

. Since C.M. challenges the constitutionality of a state statute, on April 2, 2013, this Court sent notice by certified mail to the Louisiana Attorney General's Office, in accordance with La. R.S. 13:4448. The Attorney General has not filed a brief in this case.

. The exceptions are (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record. Unwired Telecom Corp., supra; Mosing v. Domas, 02-0012, p. 11 (La. 10/15/02), 830 So.2d 967, 975 n. 2; Mallard Bay Drilling, Inc. v. Kennedy, 04-1089, p. 9 (La.6/29/05), 914 So.2d 533, 541.

. See Assignment of Error Number Three for a discussion of the merits of the constitutionality of the statute relative to the juvenile’s ineffective assistance of counsel claim.

. La. Ch.C. art. 887 provides, in pertinent part:
A. On motion of the child prior to disposition, a delinquency adjudication shall be vacated and the child discharged if, after contradictory hearing, the court finds that:
(1) The petition is substantially defective, in that an essential averment is omitted, although the child may be recharged by a new petition within the time limitations provided by law for that offense.
(2) The delinquent act charged in the petition is not based upon an offense which is punishable under a valid statute.
(3) The court making the adjudication lacked jurisdiction.
(4) The act charged constitutes double jeopardy, if not previously urged.
(5) The prosecution was not timely instituted, if not previously urged.
B. On motion of the child before disposition, an adjudication shall be vacated and a new adjudication hearing ordered if, after a contradictory hearing, the court finds that:
(1) The adjudication is not responsive to the petition, or is otherwise so defective that it will not form the basis of a valid judgment, in which case the child shall be remanded to custody or bail to await a new adjudication hearing.
(2) The adjudication was obtained by fraud or mistake sufficient to justify vacating the adjudication.
(3) The child and his counsel satisfy the requirements of Articles 851(3), 853, and 854 of the Code of Criminal Procedure regarding the discovery of new and material evidence.
(4) The adjudication judgment is contrary to the law and evidence.

. Although the Louisiana Children’s Code is silent as to whether an error patent review is mandated in a juvenile appeal, this Court has conducted limited reviews for error patent. See, e.g., State in the Interest ofZ.S., 01-1099, pp. 8-9 (La.App. 5 Cir. 2/26/02), 811 So.2d 1003, 1008. La. Ch.C. art. 104 provides that, in the absence of procedures prescribed by the Children's Code, the Louisiana Code of Criminal Procedure shall apply. This Court is thus authorized by La.C.Cr.P. art. 920 to conduct a review for errors patent.

. La. Ch.C. arts. 854-856 set forth the requirements for the juvenile's answer to a petition filed against him. A reading of these articles and the comments following reflect that the purpose of these articles are to ensure that the juvenile understands his rights prior to entering a plea of guilty.

. La. R.S. 14:95.8 states that upon first conviction "the offender shall be fined not more than one hundred dollars and imprisoned for not less than ninety days and not more than six months.”

. C.M. is represented by the Louisiana Appellate Project, which provides appellate ser *1135 vices for indigent criminal defendants in non-capital felony cases.