STATE OF LOUISIANA IN THE INTEREST OF H.D., IV

NO. 23-KA-84

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH JUVENILE COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-JU-372, DIVISION "B"
HONORABLE AMANDA L. CALOGERO, JUDGE PRESIDING

June 28, 2023

**FREDERICKA HOMBERG WICKER
JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Robert A. Chaisson

**ADJUDICATION AND DISPOSITION REVERSED; PROBATION
REVOCATION REVERSED**
    **FHW**
    **JGG**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Elizabeth B. Curren
 Ashton Robinson
 Douglas E. Rushton, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
HARRISON DAVIS, IV
 Katherine M. Franks

**WICKER, J.**

Defendant, H.D.[1], appeals his delinquency adjudication from the Juvenile Court for the Parish of Jefferson for illegal possession of a handgun in violation of La. R.S. 14:95.8 and the subsequent revocation of his probation. Because we find that the State failed to meet its burden to prove the requirement that H.D. illegally possessed a handgun "on his person" as required under La. R.S. 14:95.8, we reverse the adjudication and disposition for illegal possession of a handgun. Consequently, because the probation revocation was based upon the adjudication for illegal possession of a handgun, we also reverse the revocation of H.D.'s probation.

**STATEMENT OF THE CASE**

On September 22, 2020, the Jefferson Parish District Attorney filed a petition in juvenile court alleging that the juvenile, H.D., committed the crime of accessory after the fact of armed robbery with a firearm in violation of La. R.S. 14:25 and 14:64.3. On April 15, 2021, H.D. admitted the allegations of the petition against him. On May 15, 2021, the juvenile court imposed a disposition of two years in the Office of Juvenile Justice (OJJ) or until H.D.'s twenty-first birthday, whichever was sooner. The juvenile court suspended the disposition and placed H.D. on active probation for two years.

On June 29, 2022, the Jefferson Parish District Attorney filed a petition in juvenile court alleging in count "A" that the juvenile, H.D., illegally possessed a handgun as a juvenile in violation La. R.S. 14:95.8.[2] On September 28, 2022, following an adjudication hearing, the juvenile court adjudicated H.D. delinquent

---

[1] Pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the juvenile will be used to protect his identity. *See State in Interest of C.L.*, 15-593 (La. App. 5 Cir. 12/23/15), 184 So.3d 187, 188 n.1.

[2] The petition also alleged, in count "B" that the juvenile, H.D., also violated La. R.S. 14:94, illegal use of dangerous weapons or instrumentalities. On September 28, 2022, the State dismissed count "B" of the petition.

on count "A," illegal possession of a handgun as a juvenile.[3] The juvenile court imposed a disposition of six months in the OJJ.

On October 5, 2022, the Jefferson Parish District Attorney filed a Rule to Revoke Probation, arguing that H.D.'s probation should be revoked based on the September 28, 2022 adjudication for illegal possession of a handgun by a juvenile. On October 20, 2022, following a hearing, the juvenile court revoked H.D.'s probation under La. Ch.C. art. 914 based upon his prior adjudication. On that same date, the juvenile court imposed the previously suspended disposition of two years in the OJJ for his accessory after the fact with a firearm adjudication, and ordered the disposition to run consecutively to the six-month disposition imposed for illegal possession of a handgun by a juvenile in violation of La. R.S. 14:95.8. This appeal followed.

## FACTUAL BACKGROUND

At the adjudication hearing, Detective Jeffery Fitzmorris with the Kenner Police Department testified that on June 26, 2022, at 11:48 p.m., the Kenner Police Department received a report of shots fired in the area of 42nd Street and Newport Street. Detective Fitzmorris testified that when he arrived at the scene on June 27, 2022, at approximately 1:00 a.m., he found numerous bullet casings on the ground. He explained that there was an alleyway between 42nd and Newport Streets, with apartment buildings on each side. He stated that the two groups of casings were approximately twenty feet apart and that it appeared there had been a gunfight between two groups of people using at least two firearms.

Detective Fitzmorris testified that there had been a number of recent shootings in that area and that a couple of groups of specific individuals seemed to

---

[3] On August 23, 2022, H.D. filed a motion to suppress statement. On September 28, 2022, the State and the defense entered into a stipulation that only a portion of H.D.'s statement would be admissible—that he had been shot at Newport Street—rendering the motion to suppress moot.

be commonly associated with gunshot-related cases in that area. Detective Fitzmorris asserted that H.D. was known to him before H.D.'s arrest in the instant case and that he became aware of H.D. from prior investigations of the pattern of criminal activity in that area.

Detective Joann Gallagher of the Kenner Police Department testified that on June 26, 2022, she was working overtime patrol on the south side of Kenner. She further testified that at approximately 11:40 p.m., she received a report of shots fired and drove to the scene in the 1600 block of Newport Street. Approximately five to ten minutes after she arrived, she received information over the radio that Detective Arthur Cole, who was working a detail at the Off Track Betting (OTB) Casino at 1700 Joe Yenni Blvd., had seen a male subject, later identified as H.D., wearing red pants and a white shirt, possibly carrying a black or dark-colored shirt. She got into her marked unit and traveled toward the casino. She explained that when she got to Joe Yenni Blvd., she looked eastbound to her right and saw a subject matching Detective Cole's description of the subject.

Detective Gallagher followed behind the subject and, as she approached, she turned on her overhead lights. She testified that the subject glanced at her, and as she opened her door to speak with him, the subject subsequently ran east into the OTB casino parking lot. Detective Gallagher explained that she jumped back into her unit, went over the grass, and followed the subject into the parking lot until she observed Detective Cole apprehend him nearby. She observed the subject comply and get "on the ground." She exited her vehicle and handcuffed the subject while he was on the ground. She noticed the subject had an injury that appeared to be a graze wound from a gunshot. When questioned, the subject told Detective Gallagher that he had been shot on Newport Street.

Detective Gallagher testified that the subject identified himself as H.D. and stated that he was sixteen years old. She testified that at the time she pursued

H.D., handcuffed him on the ground, and subsequently moved him to sit on the nearby curb to await EMS, she did not notice any firearms in his possession or on the ground nearby.

Detective Cole with the Kenner Police Department testified that on June 26, 2022, he was working an off-duty detail at the OTB Casino and that he normally worked that detail from 6:00 p.m. on Sundays to between 1:00 and 1:30 a.m. on Mondays. Detective Cole pointed out that he was wearing a full police uniform and that he had his police radio with him on that night.  At some point, he heard over the radio that there had been a shooting in the Newport Street area but he was unable to respond because he was working a detail. Detective Cole stated that Newport Street is approximately three or four blocks south of the location of his detail. He recalled that Detective Gallagher broadcasted that there were approximately four subjects running northbound on Alabama, near the casino. Detective Cole explained that he stepped outside the front door of the casino and saw a black male wearing red pants and a white tank top carrying another shirt or "something," while walking westbound on Joe Yenni. Detective Cole stated that he broadcasted that information over the radio.

Detective Cole stated that while outside the casino, he observed a police unit making a U-turn near the parking lot, which illuminated the area so that he could see the silhouette of the subject running toward the casino parking lot.  Detective Cole ran down the casino ramp and into the parking lot.  He drew his weapon and ordered the subject to stop. Detective Cole testified that the subject followed commands and went down to the ground.

Detective Cole testified that other responding officers arrived and that ultimately, after Officer Cusimano pointed it out to him, he observed a firearm on the parking lot ground approximately three to five feet from where H.D. had been apprehended.  He testified that the incident occurred approximately one hour

before casino closing time and that the parking lot had been busy throughout the day. He testified however that he had never found a firearm in that parking lot before, that there was no criminal activity in that parking lot to his knowledge, and that he had worked that shift detail every other Sunday for the past four or five years. He further provided that no one reported the presence of a firearm in the parking lot throughout the day in question while he was working.

Officer Cusimano with the Kenner Police Department testified that on the night of June 26, 2022, he was patrolling the north side of Kenner when he received a report of shots fired. When he arrived on the scene, other officers were already present and the subject was detained and sitting on a curb in the casino parking lot. He testified that he walked around the scene, pacing back and forth looking at the ground, when he observed a Ruger 9mm pistol on the ground no more than five feet away from where the subject sat on the curb. Officer Cusimano further testified that the gun appeared to be dry, but that it had been "raining, drizzling on and off all night" while he had been on duty in Kenner.

## DISCUSSION

On appeal, H.D. first challenges the sufficiency of the evidence presented against him for his adjudication for possession of a handgun by a juvenile in violation of La. R.S. 14:95.8. H.D. contends that the State failed to meet its burden to prove that he knowingly possessed a firearm "on his person" as required to prove possession under La. R.S. 14:95.8. Upon review of the record and for the reasons below, we find that the juvenile court was manifestly erroneous in determining that the State met its burden to prove that H.D. knowingly possessed a handgun on his person and in adjudicating H.D. delinquent for violating La. R.S. 14:95.8.

To adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch.C.

art. 883. The constitutional standard for testing the sufficiency of evidence in delinquency proceedings, as in criminal proceedings against an adult, requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. D.W.*, 09-855 (La. App. 5 Cir. 9/14/10), 47 So.3d 1048, 1053. The burden of proof in a juvenile delinquency case is "no less stringent than the proof required in criminal proceedings against an adult." *State ex rel. T.J.*, 01-384 (La. App. 5 Cir. 10/17/01), 800 So.2d 969, 971, quoting *State ex. rel. T.J.*, 00-1723 (La. App. 5 Cir. 4/11/01), 786 So.2d 777, 780.

The rule as to circumstantial evidence is that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. *State v. Wooten*, 99-181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, *writ denied*, 99-2057 (La. 1/14/00), 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Id*.

In juvenile proceedings, the scope of review on appeal extends to both law and facts. *See* La. Const. art. V, § 10(B); *State in the Interest of D.F.*, 08-0182 (La. App. 1 Cir. 6/6/08), 991 So.2d 1082, 1084, 1085, *writ denied*, 08-1540 (La. 3/27/09), 5 So.3d 138. The "clearly wrong-manifest error" standard of review should be used to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. *State in Int. of T. L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 320; *State in Int. of C.M.*, 13-28 (La. App. 5 Cir. 10/30/13), 128 So.3d 1118, 1125, *writ denied*, 13-2796 (La. 5/30/14), 140

So.3d 1172, quoting *State ex rel. C.N.*, 11-0074 (La. App. 4 Cir. 6/29/11), 69 So.3d 711, 714.

In this case, H.D. was adjudicated delinquent for illegal possession of a handgun by a juvenile. La. R.S. 14:95.8 provides that "[i]t is unlawful for any person who has not attained the age of eighteen years knowingly to possess any handgun on his person." The statutory language "on his person" is clear and unambiguous. Where the words of a statute are clear and free from ambiguity, they are to be applied as written. *State v. Bedford*, 01-2298 (La. 1/28/03), 838 So.2d 758, 760. This Court has interpreted the statutory language "on his person" in the context of La. R.S. 14:95.8 to mean that "an adjudication of a juvenile as delinquent for illegal possession of a handgun requires a finding that the juvenile had actual, not merely constructive, possession of a gun." *State in Int. of T. L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 320-21, citing *State ex rel. C.M.*, 13-128 (La. App. 5 Cir. 10/30/13), 128 So.3d 1118, 1125, *writ denied*, 13-2796 (La. 5/30/14), 140 So.3d 1172; *State in Int. of R.P.*, 14-0468 (La. App. 4 Cir. 9/10/14), 150 So.3d 76, 79.[4]

At the adjudication hearing, the State put forth no evidence to prove that H.D. had actual possession of the firearm at issue. Detective Gallagher, who initially made contact with H.D. and attempted to speak with him from her patrol unit while he ran across the casino parking lot, testified that she never observed H.D. carrying any weapon. She further testified that, during the process of handcuffing H.D. and physically moving H.D. to sit on a nearby curb to await EMS, she did not observe any firearm on H.D.'s person or on the ground nearby

---

[4]See also *State in the Interest of T.M.*, 11-1238 (La. App. 4 Cir. 3/28/12), 88 So.3d 1228, 1234-35, *writ granted in part, judgment reversed in part on other grounds*, 12-964 (La. 12/14/12), 104 So.3d 418 (discussing the two distinguishable provisions of La. R.S. 14:95(A) and 14:95(E)—where one provision requires proof of concealment of a firearm "on one's person" and the other requires proof only of a firearm "under his immediate control"—and applying that analysis in a juvenile case to interpret the "on his person" language provided in La. R.S. 14:95.8).

during that time. The State did not introduce any fingerprint or DNA evidence to link H.D. to the firearm. No witness testified that he or she observed H.D. carrying a firearm, making any suspicious movements to dispose of a firearm, or observing H.D. in any manner to be in actual possession of a firearm. Although Officer Cusimano, who discovered the firearm at some point in time after H.D. had been apprehended, testified that the weapon was found no more than five feet from where defendant had been placed on the curb and that the firearm appeared dry even though it had been "drizzling" off and on throughout the evening, the evidence also reflected that the firearm was found in a public casino parking lot approximately one hour before closing time. Further, such testimony, although relevant to a constructive possession analysis, is not sufficient to prove that H.D. had actual possession of a firearm "on his person" as required under La. R.S. 14:95.8.[5]

Upon review of the record and all testimony and evidence introduced at the adjudication hearing, we find that the juvenile court was manifestly erroneous in adjudicating H.D. delinquent for illegal possession of a handgun by a juvenile in violation of La. R.S. 14:95.8. We therefore reverse the adjudication and disposition.

Next, H.D. contends on appeal that because the revocation of his probation was based solely on his adjudication for illegal possession of a handgun by a

---

[5] The State points to *State in the Interest of T.L., supra*, for the proposition that constructive possession in addition to other corroborating circumstantial evidence can be sufficient to support an adjudication for possession of a handgun by a juvenile in violation of La. R.S. 14:95.8. That case, however is distinguishable. In that case, firearms were located underneath a vehicle's seat padding in the backseat directly where the juvenile had been seated when the officer conducted a traffic stop and ordered the occupants out of the vehicle. In affirming the juvenile's adjudication for possession of a handgun by a juvenile, this Court found the evidence demonstrated that "the juvenile admitted several times that he owned the firearms" at issue. *State in Int. of T. L.*, 240 So.3d at 321. This Court found that the evidence of the presence of the firearms directly where the juvenile had been seated in addition to his multiple confessions to the crime constituted sufficient evidence to support the adjudication. In the instant case, H.D. filed a motion to suppress an inculpatory statement made after his arrest. The State and defense entered into a stipulation that a portion of H.D.'s statement would not be admitted into evidence. The State and defense entered into a stipulation that H.D. admitted he had been shot on Newport Street—a statement that does not support a finding that he was in actual possession of a firearm. Thus, we find *State in the Interest of T.L.* to be distinguishable from the instant case.

juvenile and, because he contends the evidence was insufficient to support that adjudication, his revocation consequently should also be set aside.

On October 5, 2022, the State filed a Rule to Revoke Probation. In its rule, the State asserted: "Inasmuch as the juvenile was found delinquent of illegally possessing a firearm while he was on probation for Accessory after the Fact of Armed Robbery with a Firearm, the State submits his probation should be revoked and the balance of the juvenile's sentence imposed." Thus, the State's Rule to Revoke was based solely upon the adjudication for possession of a handgun by a juvenile in violation of La. R.S. 14:95.8.

At the revocation hearing, probation officer Sheena Campbell testified that she was aware that H.D. was previously adjudicated for accessory after the fact to armed robbery involving the use of a firearm on April 15, 2021.[6] Officer Campbell stated that she was aware that H.D. was on probation at the time he was adjudicated delinquent for illegal possession of a handgun and that, according to La. Ch.C. art. 914, possession of a handgun while on probation is grounds for revocation.

After arguments by the State and the defense concerning the statutory language in La. Ch.C. art. 914—mandating revocation of probation for an adjudication for possession of a handgun by a juvenile—the juvenile court revoked H.D.'s probation and reinstated the two-year disposition for his accessory after the fact of armed robbery with a firearm adjudication in violation of La. R.S. 14:25 and 14:64.3. The juvenile court ordered that the two-year disposition be served consecutively to the six-month disposition imposed for his possession of a handgun by a juvenile adjudication in violation of La. R.S. 14:95.8.

---

[6] Officer Campbell further testified that H.D. was on probation in St. Charles Parish when he was initially arrested for illegal possession of a handgun. She testified that H.D.'s case was transferred in its entirety to St. Charles Parish at that time; the record appears to indicate the transfer was initiated because H.D. moved to St. Charles Parish for a period of time. The matter was subsequently transferred back to Jefferson Parish when he returned to Jefferson Parish.

A juvenile's probation may be modified or revoked by motion filed pursuant to La. Ch.C. arts. 913 and 914.  Unless the juvenile waives his right, the court shall conduct a contradictory hearing. La. Ch.C. art. 913(B); *Int. of A.H.*, 18-0389 (La. App. 1 Cir. 12/21/18), 2018 WL 6718582.

In this case, the State filed its Rule to Revoke pursuant to La. Ch.C. art. 913 and La. Ch.C. art. 914 based, however, solely on H.D.'s adjudication for possession of a firearm by a juvenile in violation of La. R.S. 14:95.8.  La. Ch.C. art. 913, in pertinent part, provides:

> A. A motion filed to revoke a child's probation shall be accompanied by a supporting affidavit specifying the claimed violations which form the basis of the revocation. The child shall be entitled to a copy of the motion and supporting affidavit.
>
> B. Unless the child waives his right, the court shall conduct a contradictory hearing. At this hearing, the child shall be entitled to:
>
> (1) The right to confront and cross-examine adverse witnesses.
> (2) The right to appear in person and to present witnesses in his own behalf.
> (3) The right to have the state bear the burden of providing by clear and convincing evidence that he violated a condition of his probation which was contained in the order of disposition.

La. Ch.C. art. 914, in pertinent part, provides:

> A. Except as provided in Paragraph B of this Article, if the court finds that the child has violated a condition of his probation, it may, consistent with the best interests of the child and the public, do any of the following:
>
> (1) Reprimand and warn the child.
> (2) Order that supervision be intensified.
> (3) Impose additional conditions to the probation.
> (4) Extend the period of probation, provided the total amount of time served by the child on probation for any one offense shall not exceed the maximum period of probation authorized by Articles 898 and 900.
> (5) Order that probation be revoked and execute the suspended sentence.
>
> B. If the probation violation is the illegal or unlawful possession of a firearm, probation revocation is mandatory, and the child shall be committed to the custody of the Department of Public Safety and Corrections.

La. Ch.C. art. 914(B) provides that if the probation violation is the illegal or unlawful possession of a firearm, probation revocation is mandatory and the child shall be committed to the custody of the Department of Public Safety and Corrections. *State in Int. of T. L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 331.

Following the revocation hearing, the juvenile court, applying the mandatory provisions of La. Ch.C. art. 914, revoked H.D.'s probation based solely on his adjudication for possession of a handgun by a juvenile. Because this Court, by way of this Opinion, has reversed H.D.'s adjudication for illegal possession of a handgun by a juvenile in violation of La. R.S. 14:95.8 for lack of sufficient evidence to support the adjudication, we find the juvenile court erred in revoking H.D.'s probation on that basis. We therefore reverse the revocation of H.D.'s probation.[7]

## DECREE

Accordingly, for the reasons stated herein, we reverse H.D.'s adjudication and disposition for illegal possession of a handgun by a juvenile in violation of La. R.S. 14:95.8. Further, because H.D.'s probation revocation was based solely on his adjudication for illegal possession of a handgun by a juvenile, we further reverse the juvenile court's revocation of H.D.'s probation.

**ADJUDICATION AND DISPOSITION
REVERSED; PROBATION REVOCATION
REVERSED**

---

[7] We point out however that under La. Ch.C. art. 913, the juvenile court has discretion to impose additional restrictions for conduct that violates conditions of probation that may not rise to the level of conduct required to prove an adjudication of a crime. Our opinion does not preclude a proceeding to revoke H.D.'s probation on grounds other than an adjudication for possession of a firearm by a juvenile. *State in Int. of Pigott*, 413 So.2d 659, 664 (La. Ct. App. 1st Cir. 1982).

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 28, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-KA-84

## E-NOTIFIED

JUVENILE COURT (CLERK)
HONORABLE AMANDA L. CALOGERO (DISTRICT JUDGE)
AMANDA L. CALOGERO (APPELLEE)      DOUGLAS E. RUSHTON, JR. (APPELLEE)      ELIZABETH B. CURREN (APPELLEE)
THOMAS J. BUTLER (APPELLEE)        KATHERINE M. FRANKS (APPELLANT)

## MAILED

ASHTON ROBINSON (APPELLEE)
ATTORNEY AT LAW
1546 GRETNA BOULEVARD
HARVEY, LA 70058

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053